# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| | ) | |
| In the Matter of | ) | MBD Action No. 09-10206-JLT |
| | ) | |
| JEFFREY AUERHAHN | ) | **HEARING BEFORE THREE JUDGE** |
| | ) | **PANEL REQUESTED** |

## JEFFREY AUERHAHN'S ANSWER
## TO BAR COUNSEL'S PETITION FOR AND ORDER TO SHOW CAUSE

Respondent Jeffrey Auerhahn ("Auerhahn"), by and through his attorneys, K&L Gates

LLP, hereby answers the Petition for and Order to Show Cause (collectively, "Petition").

## INTRODUCTION AND SUMMARY OF DEFENSE

Auerhahn submits that there is no cause for discipline against him in this action.

As outlined more fully in the accompanying Motion to Dismiss and supporting

Memorandum,[1] both of which are expressly incorporated herein, this action should be dismissed.

This action should be barred by the four-year statute of limitations.  The Petition in this case is

based on conduct which occurred in 1991, 1992 and 1993, almost *twenty years ago,* of which

this Court was aware in 1993 and concerning which the Court was expressly advised by the

Department of Justice ("Department") on August 28, 2002.  Accordingly, under the statute of

limitations which should apply here, this action was due to be filed within four years and was

not.  It thus should be dismissed.

Even were it not time barred, this action should be barred under 28 U.S.C. § 530B.  As

detailed in the Memorandum, from 2003 to January 2005, Auerhahn was subject to a searching,

---

[1] Subsequent to the filing of this Answer, Auerhahn intends to file a Motion to Dismiss the
Petition for and Order to Show cause with a supporting Memorandum, which are incorporated
herein.  As Rule 83.6(5)(C) requires an Answer, Auerhahn files this Answer but by doing so,
reserves all rights and does not waive any, and expressly reserves all arguments made in the
Motion to Dismiss that this proceeding should be dismissed as a matter of law.

detailed inquiry conducted by the Office of Professional Responsibility ("OPR") of the Department regarding the same allegations as are at issue here.  The Court was initially apprised of that investigation, but thereafter affirmatively adopted it to address the same allegations at issue here.  OPR's thorough investigation resulted in a 112-page report.  In it, OPR cleared Auerhahn of the most serious charges brought against him, including a finding of intentional misconduct, but found him responsible for recklessness and for the exercise of poor judgment and recommended discipline.  A private, written reprimand was imposed consistent with OPR's recommendation.  Despite the Court's election to rely on OPR to investigate and discipline Auerhahn, the Court instituted this case with a mandate to Bar Counsel to obtain a harsher result. It did so not because it found any fault with the process followed by OPR, but rather solely because OPR's conclusions and concomitant discipline was not, in the Court's view, "an adequate sanction" in light of the Court's contrary conclusions.  The Court is not empowered to subject Auerhahn to a duplicative investigation and double discipline simply because the Court disagrees with the result reached by a probing and fair process, which the Court itself endorsed. To do so would violate the statute governing discipline of federal prosecutors, 28 U.S.C. § 530B, and Auerhahn's constitutional right to due process.

Further, duplicating the investigation and threatening more discipline would compound the extensive, severe and unsanctioned discipline already inflicted on Auerhahn as a result of repeated publication by the Court of the allegations, despite OPR's rejection of them, which essentially subjected Auerhahn to a severe form of public censure without any process whatsoever.

Under these facts, seeking a repetitive disciplinary process and harsher punishment – disbarment or suspension, as mandated by the Court – is fundamentally unfair.  The nearly

twenty-year old allegations in this case have been fully and fairly resolved by a process sought by the Court five years ago.  This matter thus should be, finally, dismissed.

Second, Auerhahn – who has devoted his entire career to public service – has always endeavored to act with integrity as an Assistant United States Attorney and did so in the criminal cases which are at issue in this proceeding.  Auerhahn acted in good faith at all times, consistent with Department of Justice ("DOJ") policies, contemporaneous court rulings and law and at the direction of supervisory Assistant United States Attorneys and others at DOJ.  Auerhahn respectfully, but emphatically, denies that he intentionally withheld any material exculpatory evidence within the meaning of <u>Brady v. Maryland</u> (hereinafter, "exculpatory evidence") in these matters or committed professional misconduct as alleged in the Petition.  Auerhahn thus denies that probable cause for discipline exists in this case.

Third, as detailed below, Auerhahn and Assistant United States Attorney Gregg Sullivan, the prosecutors who directly handled the <u>Barone</u> and <u>Ferrara</u> matters, in good faith conducted an investigation and made appropriate disclosures as required by applicable laws, rules, regulations, and orders, and properly informed their supervisors as appropriate.  Bar Counsel contends that a trial witness, Walter Jordan, informed one of the investigatory agents on the case, Boston Police Detective Martin Coleman, of certain "facts" which Bar Counsel contends were recorded in a handwritten and typewritten document, denoted below as Exhibit 1 and Exhibit 2 respectively, and further contends that these Exhibits and the "facts" contained in them were known to and concealed from the defense by Auerhahn (and presumably Sullivan).  These allegations are untrue. Auerhahn was never shown, made aware of, notified of, or saw Exhibit 1, any typed version of Exhibit 1, or Exhibit 2, and was never made aware of their contents at any time prior to or during the <u>Ferrara</u> or <u>Barone</u> matters.  Further, Auerhahn did not create, type, or author

Exhibit 2 and did not instruct anyone to create it.  Accordingly, Bar Counsel has failed to meet its burden of proving that probable cause exists to believe that Auerhahn violated any of the disciplinary standards alleged; the Petition thus fails to state a claim upon which relief can be granted against Auerhahn and should be dismissed.

Accordingly, as set forth in detail below, Auerhahn expressly denies that probable cause exists to discipline him in this matter.

## RESPONSE TO ALLEGATIONS IN THE PETITION

Notwithstanding the foregoing, and without waiving his rights to seek a dismissal of this action as set forth in the Motion to Dismiss, filed subsequently to this Answer, Auerhahn responds to the Petition as follows:

Except as expressly admitted or denied herein below, Auerhahn does not have sufficient information to admit or deny the allegations of each and every paragraph of the Petition.

The introduction to the Petition sets forth Bar Counsel's characterization of the initiation of the proceeding as a "referral" and cites to a letter which speaks for itself as to its content. Notwithstanding, Auerhahn states that the Court instructed Bar Counsel to initiate the prosecution of formal disciplinary proceedings against Auerhahn, that the alleged misconduct had already been found by the Court, and that the penalty imposed should be suspension or disbarment.

1.      Auerhahn admits the allegations set forth in paragraph 1 of the Petition.

2.      Auerhahn admits the allegations set forth in paragraph 2 of the Petition.

3.      In answering the allegations set forth in paragraph 3 of the Petition, Auerhahn admits that he became a Trial Attorney in the Department of Justice's Criminal Division, Organized Crime and Racketeering Section, from in or about February 1985 to on or about

January 1, 1990.  From on or about January 1, 1990, to in or about January 2005, Auerhahn was

an Assistant United States Attorney in the Strike Force Unit of the United States Attorney's

Office for the District of Massachusetts, and from in or about January 2005 to the present, he has

served as an Assistant United States Attorney in the Anti-Terrorism and National Security Unit,

where he remains in good standing.

4.      Auerhahn admits the allegations set forth in paragraph 4 of the Petition.

5.      Auerhahn admits the allegations set forth in paragraph 5 of the Petition.

6.      Auerhahn admits the allegations set forth in paragraph 6 of the Petition.

7.      Auerhahn admits the allegations set forth in paragraph 7 of the Petition.

8.      In answering the allegations contained in paragraph 8 of the Petition, Auerhahn

states that Pasquale "Patsy" Barone, Walter Jordan and Vincent "Jimmy" Limoli were associates

in a crew under Ferrara's direction including but not limited to the late 1970's and early 1980's.

9.      On information and belief, Auerhahn admits the allegations set forth in paragraph

9 of the Petition.

10.     On information and belief, Auerhahn admits the allegations set forth in paragraph

10 of the Petition.

11.     Auerhahn admits the allegations set forth in the first sentence of paragraph 11 of

the Petition.  Auerhahn denies the allegations set forth in the second sentence of paragraph 11 of

the Petition and states that, on information and belief, prior to early 1987, there were two

separate investigations of Ferrara's criminal activities, neither of which was overseen by or

involved Auerhahn.  In or about mid-1987, Auerhahn became lead attorney of two LCN

investigations, one of which eventually came to include the investigation of murders believed to

have involved Ferrara, and did so at the direction of supervisory Assistant United States Attorneys and others in the Department of Justice.

12.      Auerhahn is without sufficient information to admit or deny the allegations set forth in the first sentence of paragraph 12 of the Petition.  Auerhahn denies the allegations set forth in the second sentence of paragraph 12, and states that Michael Buckley was not the sole case agent for a single investigation of Ferrara, Barone and other members of the LCN in the North End.  In answering the allegations set forth in the third sentence of paragraph 12, Auerhahn denies that he had a "team," but admits that he worked with Coleman and Buckley on the Limoli homicide and on the investigation and prosecution of Barone and Ferrara.

13.      Auerhahn admits the allegations set forth in the first sentence of paragraph 13 of the Petition.  The allegations set forth in the second and third sentences of paragraph 13 consist of Bar Counsel's characterization of a July 26, 1988 letter, which letter speaks for itself as to its content.

14.      On information and belief, Auerhahn admits the allegations set forth in paragraph 14 of the Petition.

15.      On information and belief, Auerhahn admits the allegations set forth in paragraph 15 of the Petition.

16.      On information and belief, Auerhahn admits the allegations set forth in paragraph 16 of the Petition.

17.      The allegations set forth in paragraph 17 of the Petition consist of Bar Counsel's characterization of the superseding indictment, which document speaks for itself as to its content.

18.     The allegations set forth in paragraph 18 of the Petition set forth legal conclusions to which no response is required or consist of Bar Counsel's characterization of the superseding indictment, which document speaks for itself as to its content.

19.     The allegations set forth in paragraph 19 of the Petition set forth legal conclusions to which no response is required.

20.     Auerhahn admits the allegations set forth in the first sentence of paragraph 20 of the Petition.  Auerhahn denies the allegations set forth in the second sentence of paragraph 20 of the Petition, and states that Jordan was one of the witnesses who had information about the role of Ferrara and Barone in the Limoli murder.  Auerhahn states that he is without sufficient information to admit or deny the allegations set forth in the third sentence of paragraph 20 of the Petition, including subsections a. through n. therein, and that such allegations consist of Bar Counsel's characterizations of certain disclosures made by the United States Attorney's Office, which speak for themselves as to their content.

21.     The allegations set forth in paragraph 21 of the Petition set forth legal conclusions and Bar Counsel's characterization of the evidence to which no response is required.

22.     Auerhahn admits the allegations set forth in the first sentence of paragraph 22 of the Petition, but states that he acted at all times at the direction of supervisory Assistant United States Attorneys and others in the Department of Justice.  Auerhahn denies the allegations set forth in the second sentence of paragraph 22, but states that AUSAs Sullivan and James Herbert worked with Auerhahn in prosecuting Ferrara and Barone.

23.     Auerhahn admits that paragraph 23 of the Petition accurately reflects portions of Local Rule 116.1 as in effect beginning September 1, 1990, which local rule speaks for itself as to its content.

24.     The allegations set forth in paragraph 24 of the Petition set forth legal conclusions and Bar Counsel's characterization of Local Rule 42 to which no response is required.  To the extent that a further response is required, Auerhahn states that Local Rule 42 speaks for itself, and admits that Local Rule 42, prior to September 1, 1990, set forth discovery requirements similar to Local Rule 116.1, and did not reference *Giglio v. United States*.

25.     The allegations set forth in paragraph 25 of the Petition contain legal conclusions to which no response is required, and the May 15, 1990 Memorandum and Order by Magistrate Judge Cohen speaks for itself as to its content.  Further responding, Auerhahn states that the discovery process in the action was subject to several magistrate judge orders, which governed the disclosure of documents and information subject to, among other rules, the Jencks Act.

26.     Auerhahn admits the allegations set forth in paragraph 26 of the Petition, but states that Robert Sheketoff also represented Ferrara.

27.     Auerhahn states that he is without sufficient information to admit or deny the allegations set forth in paragraph 27 of the Petition, and that the allegations consist of Bar Counsel's characterizations of certain disclosures made by the United States Attorney's Office, which speak for themselves as to their content.

28.     Auerhahn states that he is without sufficient information to admit or deny the allegations set forth in paragraph 28 of the Petition, and that the allegations consist of Bar Counsel's characterizations of certain disclosures made by the United States Attorney's Office, which speak for themselves as to their content.

29.     Auerhahn states that he is without sufficient information to admit or deny the allegations set forth in paragraph 29 of the Petition, and that the allegations consist of Bar

Counsel's characterizations of certain disclosures made by the United States Attorney's Office, which speak for themselves as to their content.

30.     Auerhahn states that he is without sufficient information to admit or deny the allegations set forth in the first sentence of paragraph 30 of the Petition, and that the allegations consist of Bar Counsel's characterizations of certain disclosures made by the United States Attorney's Office, which speak for themselves as to their content.  As to the allegations set forth in the second sentence of paragraph 30, Auerhahn admits that at some point on or before December 7, 1989, Jordan's identity as a trial witness for the United States was disclosed to the defense in discovery.

31.     On information and belief, Auerhahn admits the allegations set forth in paragraph 31 of the Petition.

32.     Auerhahn admits the allegations set forth in paragraph 32 of the Petition.

33.     The allegations set forth in paragraph 33 of the Petition consist of Bar Counsel's characterization of certain of Auerhahn's notes from a trial preparation meeting in Salt Lake City, which notes speak for themselves as to their content.  Auerhahn states that he is without sufficient information to admit or deny the remaining allegations set forth in paragraph 33 of the Petition.

34.     Auerhahn does not have sufficient information to admit or deny the allegations set forth in paragraph 34 of the Petition.

35.     Auerhahn does not have sufficient information to admit or deny the allegations set forth in paragraph 35 of the Petition.

36.     On information and belief, Auerhahn admits the allegations set forth in paragraph 36 of the Petition.

37.     Auerhahn admits that Coleman reported to him on or about July 26, 1991 that Jordan had disclosed to Coleman in Utah late on or about the evening of July 24th that Jordan had withheld information, and that Coleman appeared upset and agitated when he spoke with Auerhahn.  Auerhahn denies the remaining allegations set forth in paragraph 37 of the Petition.

38.     Auerhahn denies the allegations of paragraph 38 of the Petition, but states that he took several actions himself to follow up on Coleman's statements and documents document information regarding Jordan.  Further responding, Auerhahn denies that he did not instruct Coleman to document what Jordan may have told Coleman to avoid being required to turn over any such documentation to defense counsel.

39.     Auerhahn does not have sufficient information to admit or deny the allegations set forth in paragraph 39 of the Petition.

40.     In answering the allegations set forth in the first sentence of paragraph 40 of the Petition, Auerhahn denies that Jordan ever told him that Barone told Jordan upon returning from Francesco's that Ferrara was going to kill Barone and Jordan because Barone had not received permission to murder Limoli, but does not have sufficient information to admit or deny the remaining allegations set forth in the first sentence of paragraph 40.  In answering the allegations set forth in the second sentence, Auerhahn admits that another trial preparation session with Jordan was scheduled, but does not have sufficient information to admit or deny the remaining allegations set forth in paragraph 40 of the Petition.

41.     Auerhahn denies the allegations contained in paragraph 41, denies that he withheld any exculpatory information from the defense, and denies that Jordan said to Auerhahn at any time that Barone told him after returning from Francesco's that Ferrara was going to kill them because Barone had not gotten permission from Ferarra to kill Limoli.

42.     Auerhahn denies the allegations contained in paragraph 42 of the Petition but states that he did not instruct Coleman to document what Jordan may have said, but rather took several actions himself to follow up on and document information regarding Jordan.

43.     Auerhahn does not have sufficient information to admit or deny the allegations set forth in the first and second sentences of paragraph 43 of the Petition.  The allegations set forth in paragraph 43 of the Petition consist of Bar Counsel's characterization of Exhibit 1 attached to Bar Counsel's Petition ("Exhibit 1") and require no response.  Further responding, Auerhahn denies that Exhibit 1 is an accurate record of events or is admissible, and denies having ever been shown, been aware of, been notified of, or having seen Exhibit 1, or been aware of its contents, at any time prior to the 2255 hearing in September 2003.

44.     Auerhahn does not have sufficient information to admit or deny the allegations set forth in paragraph 44 of the Petition.  Further responding, Auerhahn denies that Exhibit 1 is an accurate record of events or is admissible, and denies having ever been shown, been aware of, been notified of, or having seen Exhibit 1 or a typed version of the same, or been aware of its contents, at any time prior to the 2255 hearing in September 2003.

45.     Auerhahn denies the allegations set forth in the first sentence paragraph 45 of the Petition.  Auerhahn cannot answer the allegations set forth in the second sentence of paragraph 45 of the Petition as drafted, and thus denies them.  Further responding, Auerhahn denies having ever been shown, been aware of, been notified of, or having seen Exhibit 1 or a typed version of the same, or having been made aware of its contents, at any time prior to the 2255 hearings in September 2003.

46.     The allegations set forth in paragraph 46 of the Petition consist of legal conclusions to which no response is required.  Further responding, Auerhahn denies the

allegations set forth in paragraph 46 of the Petition, and specifically denies that he withheld any exculpatory information from the defense, denies that Jordan said to him at any time that Barone told him after returning from Francesco's that Ferrara was going to kill them because Barone had not gotten permission from Ferrara to kill Limoli, and denies having ever been shown, been aware of, been notified of, or having seen Exhibit 1 or a typed version of the same, or been made aware of its contents, at any time prior to the 2255 hearings in September 2003.

47.     Auerhahn denies the allegations set forth in paragraph 47 of the Petition, and further denies that he withheld any exculpatory information from the defense, denies that Jordan said to Auerhahn at any time that Barone told him after returning from Francesco's that Ferrara was going to kill them because Barone had not gotten permission from Ferrara to kill Limoli, and denies having ever been shown, been aware of, been notified of, or having seen Exhibit 1 or a typed version of the same, or been made aware of its contents, at any time prior to the 2255 hearings in September 2003.

48.     On information and belief, Auerhahn admits the allegations set forth in paragraph 48 of the Petition.

49.     On information and belief, Auerhahn admits the allegations set forth in paragraph 49 of the Petition.

50.     On information and belief, Auerhahn admits the allegations set forth in paragraph 50 of the Petition.

51.     In answering the allegations set forth in paragraph 51 of the Petition, on information and belief, Auerhahn admits that on or about August 27 and 28, 1991, he, Coleman, Buckley, and Jordan, but not Sullivan, met in Minneapolis, Minnesota for a trial preparation session, and that those discussions included, among other topics, Limoli's murder and Jordan's

conversations with Barone before and after Limoli's murder.  Auerhahn denies the remaining allegations set forth in paragraph 51.

52.     In answering the allegations of paragraph 52 of the Petition, Auerhahn states that he created an outline of anticipated trial testimony of Jordan that was based, in part, on the interviews conducted in Salt Lake City ("trial testimony outline"), brought the trial testimony outline to Minnesota and made edits to the trial testimony outline in Minnesota and on other occasions, which document speaks for itself as to its content.  Further responding, Auerhahn denies the characterization of the trial testimony outline as "notes" within the scope of the Court's order at the Barone trial, and otherwise admits the allegations of paragraph 52.

53.     In answering the allegations set forth in paragraph 53 of the Petition, Auerhahn states that the trial testimony outline and edits to that outline made in Minnesota speak for themselves as to their content and thus no response is required.  To the extent that a further response is required, Auerhahn denies the characterization of the trial testimony outline as "notes" within the scope of the Court's order at the Barone trial.

54.     In answering the allegations set forth in paragraph 54 of the Petition, Auerhahn states that the trial testimony outline and edits to that outline made in Minnesota speak for themselves as to their content and thus no response is required.  To the extent that a further response is required, Auerhahn denies the characterization of the trial testimony outline as "notes" within the scope of the Court's order at the Barone trial.

55.     The allegations set forth in paragraph 55 of the Petition consist of legal conclusions to which no response is required.  To the extent that a further response is required, Auerhahn denies that he withheld any exculpatory information from the defense, denies that Jordan said to Auerhahn at any time that Barone told him that Ferrara had not ordered Limoli's

murder except as described in the May 8, 1992 and May 28, 1993 discovery letters, and otherwise denies the allegations set forth in paragraph 55 of the Petition.

56.     Auerhahn admits the allegations contained in the first and second sentences of paragraph 56, and states that he did not instruct Coleman and/or Buckley to document what Jordan said, but rather took action himself to document Jordan's statements, consistent with the practice of the United States Attorney's Office and FBI that only Assistant United States Attorneys would document trial preparation sessions.  Auerhahn does not have sufficient information to admit or deny the remaining allegations set forth in paragraph 56 of the Petition.

57.     Auerhahn denies the allegations set forth in paragraph 57 of the Petition.  Further responding, Auerhahn denies that he did not instruct Coleman or Buckley to document what Jordan may have stated in Minnesota to avoid being required to turn over such documentation to defense counsel.

58.     In answering the allegations set forth in paragraph 58 of the Petition, Auerhahn admits that the government made timely disclosure to Patriarca and Barone that Barone told Jordan that Ferrara had not ordered Limoli's murder as described in the May 8, 1992 and May 28, 1993 discovery letters respectively, further admits that the government did not make a similar disclosure to Ferrara, but denies that the government knew or should have known that it was obligated to disclose such information to Ferrara.  Auerhahn otherwise admits the allegations set forth in paragraph 58 of the Petition.

59.     Auerhahn denies the allegations set forth in paragraph 59 of the Petition.  Further responding, Auerhahn denies having ever been shown, been aware of, been notified of, or having seen Exhibit 2 to the Petition ("Exhibit 2"), or having been made aware of its contents, at any

time prior to the 2255 hearings in September 2003, and states that he did not create, type, or author Exhibit 2 and did not instruct anyone to create Exhibit 2.

60.     The allegations set forth in paragraph 60 of the Petition consist of Bar Counsel's characterization of Exhibit 2, which Exhibit speaks for itself as to its content.

61.     Auerhahn does not have sufficient information to admit or deny the allegations set forth in paragraph 61 of the Petition because Auerhahn denies having ever been shown, been aware of, been notified of, or having seen Exhibit 2 or having been made aware of its contents, at any time prior to the 2255 hearings in September 2003, and states that he did not create, type, or author Exhibit 2 and did not instruct anyone to create Exhibit 2.

62.     Auerhahn admits that the government did not produce Exhibit 2 or its substance to defense counsel because Auerhahn denies having ever been shown, been aware of, been notified of, or having seen Exhibit 2 or having been made aware of its contents, at any time prior to the 2255 hearings in September 2003, and states that he did not create, type, or author Exhibit 2 and did not instruct anyone to create Exhibit 2.

63.     Auerhahn admits that the government filed a trial brief on or about October 16, 1991, which trial brief speaks for itself as to its content.  The remaining allegations set forth in paragraph 63 of the Petition consist of Bar Counsel's characterization of the trial brief to which no response is required.

64.     On information and belief, Auerhahn admits the allegations set forth in paragraph 64 of the Petition.

65.     Auerhahn admits the allegations set forth in paragraph 65 of the Petition, and states that Ferrara and his co-defendants, except Barone, entered into plea agreements and pled guilty after jury selection.

66.     On information and belief, Auerhahn admits the allegations set forth in the first sentence of paragraph 66 of the Petition.  The allegations set forth in the second sentence of paragraph 66 of the Petition consist of Bar Counsel's characterization of a plea agreement, which speaks for itself as to its content.  Auerhahn denies the allegations set forth in the third sentence of paragraph 66, but states that the trial brief, which speaks for itself as to its content, formed part of the factual basis for the pleas.

67.     The allegations set forth in paragraph 67 of the Petition consist of Bar Counsel's characterization of the judgment against Ferrara, which judgment speaks for itself as to its content.

68.     Auerhahn admits that on or about May 8, 1992, the government wrote a letter to Martin Weinberg, enclosing discovery, which letter speaks for itself as to content, except that Auerhahn admits that paragraph 68 accurately reflects portions of the May 8, 1992 letter.  Further responding, Auerhahn states that his and the government's actions comported with the practices and understanding of the legal obligations of the United States Attorney's Office at the time and with the discovery orders that had been entered in this case, such as Magistrate Judge Cohen's May 15, 1990 order.  The government's discovery letters reserved the right for the government to withhold impeachment information until the time that Jencks Act material was produced during trial.  Because Ferrara pled prior to trial, no duty to disclose the information to Ferrara existed under the practice and law that existed at the time of the underlying matters.

69.     Auerhahn does not have sufficient information to admit or deny the allegations set forth in the first sentence of paragraph 69 of the Petition.  Auerhahn denies that Jordan ever told him that Barone told Jordan upon returning from Francesco's that Ferrara was going to kill Barone, and thus denies the allegations contained in the second sentence of paragraph 69.

70.     Auerhahn admits that other than the May 8, 1992 discovery letter, he had no other written documentation that Barone immediately retracted his statement to Jordan that Ferrara had not ordered or sanctioned Limoli's murder, but denies that he needed written documentation on May 8, 1992 in order to disclose the same to defense counsel.

71.     The allegations set forth in paragraph 71 of the Petition consist of Bar Counsel's characterization of a First Circuit opinion to which no response is required.  To the extent that a further response is required, the opinion speaks for itself as to its content.

72.     In answering the allegations set forth in the first sentence of paragraph 72 of the Petition, Auerhahn states that the May 28, 1993 letter speaks for itself as to its content.  In answering the allegations set forth in the second sentence of paragraph 72 of the Petition, Auerhahn admits that he was aware of the contents of the letter and that the letter was being sent to defense counsel, and further states he likely had a role in drafting the letter, but denies that he approved or ratified the letter.  Auerhahn denies the allegations set forth in the third sentence of paragraph 72 of the Petition.  Auerhahn denies having ever been shown, been aware of, been notified of, or having seen Exhibit 1, any typed version of Exhibit 1, or Exhibit 2 or having been made aware of their contents, at any time prior to the 2255 hearings in September 2003, and states that he did not create, type, or author Exhibit 2 and did not instruct anyone to create Exhibit 2, and therefore denies the allegations set forth in the fourth sentence of paragraph 72. Auerhahn admits the allegations set forth in the fifth sentence of paragraph 72 of the Petition. Auerhahn does not have sufficient information to admit or deny the allegations set forth in the sixth sentence of paragraph 72 of the Petition regarding the trial testimony outline and edits to that outline made in Minnesota.

73.     Auerhahn admits the allegations set forth in the first sentence of paragraph 73 of the Petition.  In answering the allegations set forth in the second sentence of paragraph 73 of the Petition, Auerhahn states, on information and belief, that he made edits to the trial testimony outline in advance of trial and during trial.

74.     On information and belief, Auerhahn admits the allegations set forth in the first and second sentences of paragraph 74 of the Petition.  The allegations set forth in the third sentence of paragraph 74 of the Petition consist of Bar Counsel's characterization of Barone's defenses, which defenses speak for themselves as to their content, or contain legal conclusions to which no response is required.

75.     Auerhahn admits the allegations set forth in the first and second sentences of paragraph 75 of the Petition.  The allegations set forth in the third sentence of paragraph 75 of the Petition consist of Bar Counsel's characterization of testimony, which testimony speaks for itself as to its content.

76.     The allegations set forth in the first sentence of paragraph 76 of the Petition consist of Bar Counsel's characterization of Coleman's testimony, which testimony speaks for itself as to its content.  In answering the allegations set forth in the second sentence, Auerhahn denies having ever been shown, been aware of, been notified of, or having seen Exhibit 1, any typed version of Exhibit 1, or Exhibit 2 or having been made aware of their contents, at any time prior to the 2255 hearings in September 2003, and states that he did not create, type, or author Exhibit 2 and did not instruct anyone to create Exhibit 2, and thus denies the allegations set forth in the second sentence of paragraph 76.

77.     On information and belief, Auerhahn admits the allegations set forth in paragraph 77 of the Petition.

78.     The allegations set forth in paragraph 78 of the Petition consist of a portion of Jordan's testimony on September 8, 1993, which testimony speaks for itself as to its content.

79.     Auerhahn admits that he had no documentation on September 8, 1993 that Barone and Jordan were kidding around when Barone said that Ferrara had not ordered the hit on Limoli, denies that he had no documentation that Barone's statement that Ferrara had not ordered the hit on Limoli was immediately retracted, and denies that he needed such documentation. Auerhahn's trial testimony outline referenced in the second sentence of paragraph 79 of the Petition speaks for itself as to its content.

80.     The allegations set forth in paragraph 80 of the Petition consist of Bar Counsel's characterization of defense counsel's objections, which objections speak for themselves as to their content.

81.     The allegations set forth in paragraph 81 of the Petition consist of Bar Counsel's characterization of a lobby conference, which transcript and any instructions contained therein speak for themselves as to their content.

82.     The allegations set forth in paragraph 82 of the Petition consist of Bar Counsel's characterization of a transcript from trial, which transcript speaks for itself as to its content.

83.     The allegations set forth in paragraph 83 of the Petition consist of Bar Counsel's characterization of the Superseding Indictment, which speaks for itself as to its content.

84.     In answering the allegations set forth in the first sentence of paragraph 84 of the Petition, Auerhahn states that Jordan's trial testimony speaks for itself as to its content. Auerhahn denies the allegations set forth in the second sentence of paragraph 84 of the Petition.

85.     The allegations set forth in paragraph 85 of the Petition consist of Bar Counsel's characterization of defense counsel's questions during Buckley's trial testimony, which questioning and testimony speaks for themselves as to their content.

86.     The allegations set forth in paragraph 86 of the Petition consist of Bar Counsel's characterization of defense counsel's questions during Buckley's trial testimony, which questioning and testimony speaks for themselves as to their content.

87.     The allegations set forth in paragraph 87 of the Petition consist of Bar Counsel's characterization of a September 28, 1993 lobby conference, which transcript of the lobby conference speaks for itself as to its content.

88.     The allegations set forth in paragraph 88 of the Petition consist of Bar Counsel's characterization of a September 28, 1993 lobby conference, which transcript of the lobby conference speaks for itself as to its content.

89.     The allegations set forth in paragraph 89 of the Petition consist of Bar Counsel's characterization of a September 28, 1993 lobby conference, which transcript of the lobby conference speaks for itself as to its content.  Further responding, Auerhahn admits that he created a trial testimony outline after the Salt Lake City trial preparation session, brought the trial testimony outline to Minnesota and made edits to the trial testimony outline in Minnesota. Further responding, Auerhahn states that during the September 28, 1993 lobby conference, he expressly disclosed to the Court that his notes were a different document from the trial testimony outline.

90.     The allegations set forth in paragraph 90 of the Petition consist of Bar Counsel's characterization of the Court's statements in a lobby conference, which statements speak for themselves as to their content.

91.     In answering the allegations set forth in paragraph 91 of the Petition, on information and belief, Auerhahn admits that he produced portions of his notes from Salt Lake City on or about September 28, 1993, which notes speak for themselves as to their content.

92.     In answering the allegations set forth in the first sentence of paragraph 92 of the Petition, Auerhahn admits that he created a trial testimony outline after the Salt Lake City trial preparation session, brought the trial testimony outline to Minnesota and made edits to the trial testimony outline, which trial testimony outline speaks for itself as to its content.  Auerhahn denies the remaining allegations set forth in paragraph 92 of the Petition.

93.     On information and belief, Auerhahn admits the allegations set forth in the first and second sentences of paragraph 93 of the Petition.  In answering the allegations set forth in the third sentence of paragraph 93 of the Petition, Auerhahn states that the Court's comments during the lobby conference speak for themselves as to their content.  Auerhahn denies the remaining allegations set forth in paragraph 93 of the Petition.

94.     The allegations set forth in paragraph 94 of the Petition consist of Bar Counsel's characterization of a court ruling, which ruling speaks for itself as to its content.

95.     The allegations set forth paragraph 95 of the Petition consist of Bar Counsel's characterization of the court's statements, which statements speaks for themselves as to their content.

96.     Auerhahn denies the allegations set forth in paragraph 96 of the Petition.  Further responding, Auerhahn states that Sullivan's statements during the lobby conference speak for themselves as to their content, but denies that Sullivan's statements during the lobby conference were untruthful or that he believed they were so, and denies having ever been shown, been aware

of, been notified of, or having seen Exhibit 1 or a typed version of the same, or been made aware

of its contents, at any time prior to the 2255 hearings in September 2003.  Further responding,

Auerhahn denies having ever been shown, been aware of, been notified of, or having seen

Exhibit 2 or having been made aware of its contents, at any time prior to the 2255 hearings in

September 2003, and states that he did not create, type, or author Exhibit 2 and did not instruct

anyone to create Exhibit 2, and denies withholding exculpatory information from the defense.

97.     Auerhahn denies the allegations set forth in paragraph 97 of the Petition.  Further

responding, Auerhahn denies the characterization of the trial testimony outline as "notes" within

the scope of the Court's order at the Barone trial, denies that his trial testimony outline contained

information inconsistent with Jordan's testimony at trial and denies that he had knowledge that

his trial testimony outline contained information inconsistent with Jordan's testimony, and denies

withholding exculpatory information from the defense

98.     Auerhahn denies the allegations set forth in paragraph 98 of the Petition.  Further

responding, Auerhahn denies withholding exculpatory information from the defense or

misrepresenting those facts to the court, and states that he disclosed the existence of his trial

testimony outline to the Court and the parties during a lobby conference on or about September

28, 1993.

99.     The allegations set forth in the first sentence of paragraph 99 of the Petition

consist of Bar Counsel's characterization of the court's comments during a September 30, 1993

conference, which statements speak for themselves as to their content.  Auerhahn admits that on

or about September 30, 1993, he and Sullivan produced their notes of the trial preparation

session with Jordan in Salt Lake City.

100.    Auerhahn denies the allegations set forth in paragraph 100 of the Petition.  Further
responding, Auerhahn denies the characterization of the trial testimony outline as "notes" within
the scope of the Court's order at the Barone trial, denies withholding exculpatory information
from the defense or misrepresenting those facts to the court or the defense, and states that he
disclosed the substance of Jordan's inconsistent statements to the defense, and disclosed the
existence of his trial testimony outline to the Court and the parties during a lobby conference on
or about September 28, 1993.

101.    The allegations set forth in the first sentence of paragraph 101 of the Petition
consist of Bar Counsel's characterization of the court's statements during an October 1, 1993
conference, which statements speak for themselves as to their content.  Auerhahn admits the
allegations set forth in the second sentence of paragraph 101 of the Petition, except that the Court
ordered the government to provide the defense with notes regarding the DiFronzo and Corlito
murders.

102.    The allegations set forth in paragraph 102 of the Petition consist of Bar Counsel's
characterization of certain events in the trial, which events speak for themselves as to their
content.

103.    The allegations set forth in paragraph 103 of the Petition consist of Bar Counsel's
characterization of an April 25, 1994 sentencing hearing, which hearing transcript speaks for
itself as to its content, and contains legal conclusions to which no response is required.  Further
responding, Auerhahn admits the allegations set forth in the third and fourth sentences of
paragraph 103, but states that all parties at the sentencing – the Court, the Probation Department,
defense counsel or the Assistant United States Attorneys – did not recognize the error.  Further

responding, Auerhahn states that the government's pre-sentencing report and the sentencing memo were both signed on behalf of the government by Sullivan, not Auerhahn.

104.    The allegations set forth in paragraph 104 of the Petition consist of Bar Counsel's characterization of the court's sentencing of and judgment against Barone, which sentencing and judgment speak for themselves as to their content, and contain legal conclusions as to which no response is required.

105.    The allegations set forth in paragraph 105 of the Petition consist of Bar Counsel's characterization of the appeal and judgment issued by the First Circuit, which appeal and judgment speak for themselves.

106.    Auerhahn does not have sufficient information to admit or deny the allegations set forth in paragraph 106 of the Petition.  Further responding, Auerhahn denies that Jordan told him in Salt Lake City that the Limoli murder was not ordered by Ferrara, and denies that he believed that Jordan had perjured himself in the Barone trial.

107.    In answering the allegations set forth in paragraph 107 of the Petition, Auerhahn admits that Barone and Ferrara filed petitions pursuant to 28 U.S.C. § 2255 on or about June 5, 1997 and June 29, 2000 respectively, and that they filed amended petitions on or about July 25, 2003 and July 16, 2003, respectively.  Otherwise, Auerhahn does not have sufficient information to admit or deny the allegations set forth in paragraph 107 of the Petition.

108.    Auerhahn admits the allegations set forth in paragraph 108 of the Petition, but states that Auerhahn and Herbert also represented the government at one point.

109.    The allegations set forth in the first two sentences of paragraph 109 of the Petition consist of Bar Counsel's characterization of a court order, which order speaks for itself as to its content, and contain legal conclusions as to which no response is required.  Auerhahn denies the

allegations set forth in the third and fourth sentences of paragraph 109 of the Petition.  Further responding, Auerhahn denies intentionally failing to provide his trial outline to government counsel or misrepresenting those facts to government lawyers or agents or the court, and states that he identified and produced his trial outline to government counsel.

110.    Auerhahn admits the allegations set forth in paragraph 110 of the Petition.

111.    The allegations set forth in paragraph 111 of the Petition consist of Bar Counsel's characterization of portions of Jordan's testimony, which testimony speaks for itself as to its content.

112.    The allegations set forth in paragraph 112 of the Petition consist of Bar Counsel's characterization of portions of Jordan's testimony, which testimony speaks for itself as to its content.  Further responding, Auerhahn admits that the government met with Jordan in Salt Lake City before it met with Jordan in Minnesota.

113.    The allegations set forth in paragraph 113 of the Petition consist of Bar Counsel's characterization of portions of Jordan's testimony, which testimony speaks for itself as to its content.

114.    The allegations set forth in paragraph 114 of the Petition consist of Bar Counsel's characterization of portions of Jordan's testimony, which testimony speaks for itself as to its content.  Further responding, Auerhahn denies the allegations set forth in the second sentence that Jordan told him at any time that "[Y]ou know, Patsy never told me Vinn[y] ordered the hit," denies that Jordan told the government in Salt Lake City that the Limoli murder was not ordered by Ferrara, denies that he believed that Jordan had perjured himself in the Barone trial, and states that Auerhahn instructed Jordan at all times to tell the truth.

115.     The allegations set forth in paragraph 115 of the Petition consist of Bar Counsel's characterization of portions of Coleman's testimony, which testimony speaks for itself as to its content.  Further responding, Auerhahn denies that Jordan told the government in Salt Lake City that the Limoli murder was not ordered by Ferrara, denies that he believed that Jordan had perjured himself in the Barone trial, and states that Auerhahn instructed Jordan at all times to tell the truth.

116.     Auerhahn denies the allegations set forth in the first and third sentences of paragraph 116 that Coleman told him that Coleman had created a memorandum after a conversation with Jordan and had it typed, and denies that Coleman delivered any such typed memorandum to Auerhahn.  The allegations set forth in the remainder of paragraph 116 of the Petition consist of Bar Counsel's characterization of portions of Coleman's testimony, which testimony speaks for itself as to its content.

117.     Auerhahn does not have sufficient information to admit or deny the allegations set forth in paragraph 117 of the Petition.

118.     Auerhahn admits the allegations set forth in the first sentence of paragraph 118 of the Petition.  The allegations set forth in the remainder of paragraph 118 of the Petition consist of Bar Counsel's characterization of portions of Auerhahn's testimony, which testimony speaks for itself as to its content.  Further responding, Auerhahn denies having ever been shown, been aware of, been notified of, or having seen Exhibit 1, any typed version of Exhibit 1, or Exhibit 2 or having been made aware of their contents, at any time prior to the 2255 hearings in September 2003, and states that he did not create, type, or author Exhibit 2 and did not instruct anyone to create Exhibit 2.  Further responding, Auerhahn states that pursuant to several sequestration orders issued by the Court, including the Court's August 26, 2003 order (see Dckt. No. 56 in

Case No. 98-11104) he was a sequestered witness during the 2255 hearings and was thus not permitted to speak to counsel, to other witnesses, to review the case file, or otherwise refresh his recollection about the underlying events, which, at that point, had occurred 10 years in the past.

119.    The allegations set forth in paragraph 119 of the Petition consist of Bar Counsel's characterization of portions of Auerhahn's testimony during the 2255 hearing, which testimony speaks for itself as to its content.

120.    Auerhahn admits the allegations set forth in the first sentence of paragraph 120 of the Petition.  The remaining allegations consist of Bar Counsel's characterization of transcripts or court orders, which speak for themselves as to their content.  In further responding to the allegations contained in the second sentence of paragraph 120 of the Petition, Auerhahn states that he identified the sentencing error in this action and filed a notice with the Court notifying the Court and defense counsel of the issue of his own accord.

121.    In responding to the allegations contained in the first sentence of paragraph 121 of the Petition, Auerhahn admits that he provided the trial testimony outline to Assistant U.S. Attorney Lang in or about September 2003, admits that he created the trial testimony outline after the Salt Lake City trial preparation session, brought the trial testimony outline to Minnesota and made edits to the trial testimony outline in Minnesota and probably Boston prior to Jordan's testimony at Barone's trial.  In responding to the allegations contained in the second sentence, Auerhahn states that he did not understand that the trial testimony outline was within the scope of the Court's discovery orders during the Barone trial, and thus admits that he did not produce it to the Court, Barone's counsel, Ferrara's counsel, or to the government's counsel during the 2255 hearing.  Further responding, Auerhahn states that it was not the policy and practice of AUSA's to produce work product to opposing counsel or defendants or to produce notes of trial

preparation sessions to such parties.  In any event, Auerhahn states that during the September 28, 1993 lobby conference, he expressly disclosed to the Court that his notes were different from the trial testimony outline.  Further responding to the allegations contained in the second sentence of paragraph 121, Auerhahn states that he identified the existence of the trial testimony outline and came forward with it during the 2255 hearing of his own accord.  Further responding, Auerhahn states that pursuant to several sequestration orders issued by the Court, including the Court's August 26, 2003 order (<u>see</u> Dckt. No. 56 in Case No. 98-11104) he was a sequestered witness during the 2255 hearings and was thus not permitted to speak to counsel, to other witnesses, to review the case file, or otherwise refresh his recollection about the underlying events, which, at that point, had occurred 10 years in the past.

122.    In answering the allegations set forth in paragraph 122 of the Petition, on information and belief, Auerhahn admits that the trial testimony outline – which had been disclosed to the Court during the trial in 1993 – was provided to the Court and marked as an exhibit in the 2255 hearing in or about September 2003.

123.    The allegations set forth in paragraph 123 of the Petition consist of Bar Counsel's characterization of the court's statements on October 3, 2003, which statements speak for themselves as to their content, except that Auerhahn denies that prior to or during Barone's trial, Jordan or anyone else told Auerhahn that Jordan and Barone had to flee from Boston because Barone had not gotten permission from Ferrara to kill Limoli.

124.    The allegations set forth in paragraph 124 of the Petition consist of Bar Counsel's characterization of Barone's plea agreement, which agreement speaks for itself as to its terms.

125.    The allegations set forth in paragraph 125 of the Petition consist of Bar Counsel's characterization of the court's action and judgment on Barone's plea agreement, which speak for themselves as to its content.

126.    The allegations set forth in paragraph 126 of the Petition consist of Bar Counsel's characterization of the court's April 12, 2005 order, which order speaks for itself as to its content, except that Auerhahn denies that prior to or during Barone's trial, Jordan or anyone else told Auerhahn that Jordan and Barone had to flee from Boston because Barone had not gotten permission from Ferrara to kill Limoli.  Auerhahn admits the allegations set forth in the last sentence of paragraph 126.

127.    The allegations set forth in paragraph 127 of the Petition consist of Bar Counsel's characterization of the court's action on Ferrara's motion, which action speaks for itself as to its content.

128.    The allegations set forth in paragraph 128 of the Petition consist of Bar Counsel's characterization of the court's action on Barone's plea agreement, which action speaks for itself as to its content.  Auerhahn admits that the First Circuit's decision is contained in Ferrara v. United States, 456 F.3d 278 (1st Cir. 2006).

129.    The allegations set forth in paragraph 129 of the Petition set forth legal conclusions to which no response is required.  To the extent a further response is required, Auerhahn denies the allegations set forth in paragraph 129 of the Petition.

130.    Auerhahn denies the allegations set forth in paragraph 130 of the Petition.

131.    Auerhahn denies the allegations set forth in paragraph 131 of the Petition.

132.    Auerhahn denies the allegations set forth in paragraph 132 of the Petition.

133.    Auerhahn denies the allegations set forth in paragraph 133 of the Petition.

134.    Auerhahn denies the allegations set forth in paragraph 134 of the Petition.

135.    Auerhahn admits that DR 1-102, 6-101, 7-102, 7-103, 7-106, PF 1, and PF 7 set forth in paragraph 135 were in effect at the time of the events alleged in the Petition and accurately reflect the text of Massachusetts Rules of Professional Conduct as in effect. Auerhahn denies that Rule 3.4 and 8.4 apply to these proceedings, as such rules were adopted on June 9, 1997, and became effective January 1, 1998, and thus any allegations or causes of action predicated thereon should be dismissed.  Further responding, Auerhahn denies that he breached any of these standards, and denies that Bar Counsel has alleged a violation of any professional rules, denies that Bar Counsel has shown cause to discipline Auerhahn, and denies that Bar Counsel is entitled to any form of relief requested in this action.

## AFFIRMATIVE DEFENSES

1.    The Petition fails to state a claim upon which relief can be granted against Auerhahn.

2.    Bar Counsel has failed to meet her burden of proof that Auerhahn violated any of the disciplinary standards cited in the Petition.

3.    Bar Counsel has failed to demonstrate that probable cause exists in this action.

4.    Bar Counsel improperly relies on prior findings and/or decisions in the Ferrara and Barone litigation.

5.    The Petition fails to satisfy the requirements of Local Rule 83.6.

6.    The Petition has been brought in violation of 28 U.S.C. § 530B.

7.    Bar Counsel's claims are barred, in whole or in part, by the applicable statutes of limitation and/or by the application of the doctrine of laches.

8.    Bar Counsel's claims are barred, in whole or in part, because the Court does not have subject matter jurisdiction.

9.     Bar Counsel's claims are barred, in whole or in part, because of the significant delay in prosecution which has resulted in substantial prejudice to Auerhahn.

10.     Bar Counsel's claims are barred, in whole or in part, because they are in violation of Auerhahn's right to due process.

11.     Bar Counsel's claims are barred, in whole or in part, by the application of the doctrine of fundamental fairness.

12.     Bar Counsel's claims are barred, in whole or in part, by the application of the doctrines of collateral and judicial estoppel.

13.     Bar Counsel's claims are barred, in whole or in part, by the punishment – both formal and informal – Auerhahn already received as a result of the conduct alleged in the Petition.

14.     Bar Counsel's claims are barred by the doctrine of res judicata.

15.     Bar Counsel's claims are barred, in whole or in part, by application of the doctrines of waiver and ratification.

16.     Auerhahn is not liable for any claims made by Bar Counsel in the Petition because Auerhahn's conduct and disclosures at all times complied, and were made in good faith conformity with, all applicable laws, rules, regulations, applicable court orders, and policies and practices in place at the time.

17.     Auerhahn is not liable for any claims made by Bar Counsel in the Petition because Auerhahn did not conceal or misrepresent any facts to the Department of Justice and sought guidance from the Department of Justice in discharging his responsibilities.

18.     In light of the repeated, public commentary on this action by the Court alleging misconduct by Auerhahn over the six years since these allegations were first made, Auerhahn's

rights to due process and fundamental fairness, and his ability to receive a fair hearing have been lost, at least in this District.

19.    Bar Counsel has failed to demonstrate that Rules 3.4 and 8.4 are applicable in this matter.  Any application of those rules to Auerhahn would violate Auerhahn's rights and applicable law.

20.    Auerhahn hereby gives notice that he intends to rely upon such other and further defenses as may become available during the proceedings in this case, and hereby reserves his right to amend the Answer and assert such defenses.

## FACTORS IN MITIGATION

As outlined above, Bar Counsel has failed to meet her burden of demonstrating that probable cause exists in this case.  Notwithstanding that fact, Auerhahn further states:

1.    Auerhahn has already been investigated, disciplined, and punished as a result of the conduct alleged in the Petition.

2.    Auerhahn has been formally and informally disciplined, publicly reprimanded and thereby repeatedly punished as a result of: (a) the investigation by the Department of Justice Joint Task Force; (b) the investigation by OPR; (c) the publication of the results of OPR's investigation and the discipline Auerhahn received by the Court; (d) the publication of numerous letters to the acting Attorneys General publicly released by the Court; (e) the criticism of Auerhahn by the Court in written decisions; and (f) the resulting harsh criticism of Auerhahn by the press.

3.    Auerhahn has been a dedicated public servant who has devoted his career to public service and who has always endeavored to act with integrity as an Assistant United States Attorney.

4.      Auerhahn has an otherwise excellent and unblemished record at the Bar.

5.      Prior to and in the 18 years since the alleged misconduct, Auerhahn has not been the subject of any disciplinary action whatsoever taken against him.

6.      Since being admitted to practice on December 17, 1979, Auerhahn has not been the subject of any disciplinary action whatsoever except for the instant action.

7.      Since being admitted to practice on December 17, 1979, Auerhahn has not been the subject of any disciplinary action or written criticism by any judge other than the Court in this action.

8.      As evidenced by the lack of similar disciplinary complaints, Auerhahn has not, and will not repeat such alleged offenses in the future.

9.      Bar Counsel has failed to prove any wrongful intent.

10.     Bar Counsel has failed to prove that probable cause exists such that additional discipline is warranted.

11.     Auerhahn has cooperated in the disciplinary proceeding and with governmental authorities.

12.     Nearly twenty years have elapsed between Auerhahn's alleged misconduct and Bar Counsel's filing of the Petition.  The delay in prosecution has resulted in substantial prejudice to Auerhahn.

13.     Auerhahn is a man of good character and did not act dishonestly.

14.     During the 2225 hearing, Auerhahn voluntarily and of his own accord came forward with the trial testimony outline, which he had expressly disclosed voluntarily to the Court during a lobby conference in September 1993.

15.     During the 2225 hearing, Auerhahn voluntarily and of his own accord came forward with the information and law regarding the sentencing error made by the Court, Probation Department, defense counsel and United States Attorney's Office at Barone's original sentencing.

16.     Bar Counsel cannot prove that Ferarra or Barone served any more time in jail than otherwise would have been the case, or suffered any harm as the result of the allegations contained in the Petition.

17.     As one of the prosecuting attorneys in the Barone trial, Auerhahn shared responsibility to ensure proper disclosures were made consistent with the law.  To the extent that any such disclosures were insufficient, and to the extent that Coleman and/or Jordan failed to fully inform the United States Attorney's Office of any facts prior to and during the Barone trial in order to make such disclosures, Auerhahn is deeply regretful.

18.     Auerhahn is a respected, principled family man, who, in addition to an entire career of public service, has been involved in positive social and community activities.

19.     Aside from the public disclosures made by the Court and their aftermath as described above, Auerhahn has enjoyed an excellent reputation for integrity, honesty, fairness and justness as a lawyer and prosecutor.

## **REQUEST FOR HEARING**

Pursuant to D. Mass. Local Rule 83.6(5), Auerhahn requests a hearing on all issues raised by Bar Counsel's Petition.  Auerhahn further requests that a three-judge panel be chosen to rule on the merits of Bar Counsel's allegations and Auerhahn's defenses.

WHEREFORE, respondent Jeffrey Auerhahn respectfully requests that the Court:

i.      Enter a judgment in Auerhahn's favor on all counts of the Petition;

ii.     Dismiss the Petition with prejudice; and

iii.    Grant such other relief as the Court deems just and proper.

Respectfully submitted,

JEFFREY AUERHAHN

By his attorneys,

/s/ *Michael D. Ricciuti*
Michael DeMarco (BBO #119960)
Michael D. Ricciuti (BBO #550771)
Arnold R. Rosenfeld (BBO #428860)
Ryan M. Tosi (BBO #661080)
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
Tel. (617) 261-3100
Fax. (617) 261-3175
michael.demarco@klgates.com
michael.ricciuti@klgates.com
arnie.rosenfeld@klgates.com
Dated: November 25, 2009                    ryan.tosi@klgates.com

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 25th day of November 2009:

Nancy E. Kaufman, Esq.
Office of Bar Counsel
99 High Street
Boston, MA 02110
Email: n.kaufman@massbbo.org

/s/ *Michael D. Ricciuti*
Michael D. Ricciuti