# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| _____ )<br>In the Matter of ) | MBD Action No. 09-10206-JLT |
| ) | |
| JEFFREY AUERHAHN ) | **ORAL ARGUMENT BEFORE** |
| ) | **THREE-JUDGE PANEL REQUESTED** |
| _____ ) | |

## JEFFREY AUERHAHN'S MEMORANDUM IN SUPPORT OF HIS
## MOTION TO DISMISS PETITION FOR AND ORDER TO SHOW CAUSE

Michael DeMarco (BBO #119960)
Michael D. Ricciuti (BBO #550771)
Arnold R. Rosenfeld (BBO #428860)
Ryan M. Tosi (BBO #661080)
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
Tel. (617) 261-3100
Fax. (617) 261-3175
michael.demarco@klgates.com
michael.ricciuti@klgates.com
arnie.rosenfeld@klgates.com
ryan.tosi@klgates.com

*Attorneys for Jeffrey Auerhahn*

Respondent Jeffrey Auerhahn ("Auerhahn") respectfully submits this memorandum in support of his motion to dismiss Bar Counsel's Petition for and Order to show cause (collectively, the "Petition").[1]  As set forth in detail below, this action should be barred by the four-year statute of limitations and is, in all events, improperly duplicative of a prior disciplinary action that the Court affirmatively adopted as the disciplinary mechanism that would be used to resolve the issues in this matter.  Accordingly, proceeding in this case would contravene the statute of limitations, the statute governing discipline of government attorneys, and Auerhahn's constitutional rights to due process and fundamental fairness.

The Petition in this case is based on conduct which occurred in 1991, 1992 and 1993, almost *twenty years ago.*  This Court has recently written that the conduct at issue here was known to it in 1993.  In any event, the allegations against Auerhahn were disclosed to the Court on August 28, 2002.  Accordingly, under the statute of limitations which should apply here, this action was due to be filed within four years and was not.  It thus should be dismissed.

Even were it not time barred, this action should be barred under 28 U.S.C. § 530B.  As detailed below, from 2003 to January 2005, Auerhahn was subject to a searching, detailed inquiry conducted by the Office of Professional Responsibility ("OPR") of the Department of Justice (the "Department") regarding the same allegations as are at issue here.  The Court was initially apprised of that investigation, which was requested by the Department itself, but thereafter, in written correspondence to the Attorney General of the United States, the Court affirmatively adopted the OPR process to address the same allegations at issue here.  OPR's thorough investigation resulted in a 112-page report.  In it, OPR cleared Auerhahn of the most serious charges brought against him, including a finding of intentional misconduct, but found

---

[1] Auerhahn has filed an Answer to the Petition.  In doing so, Auerhahn expressly reserves, and did not waive, any rights or defenses asserted in this Motion to Dismiss.

him responsible for recklessness and the exercise of poor judgment and recommended discipline. A private, written reprimand was imposed consistent with OPR's recommendation. Despite the Court's election to rely on OPR to investigate and discipline Auerhahn, the Court instituted this case with a mandate to Bar Counsel to obtain a harsher result. It did so not because it found any fault with the process followed by OPR, but rather solely because OPR's conclusions and concomitant discipline was not, in the Court's view, "an adequate sanction" in light of the Court's contrary conclusions.

This the Court cannot do – it cannot subject Auerhahn to a duplicative investigation and double discipline simply because the Court disagrees with the result reached by a probing and fair process, which the Court itself endorsed. To do so would violate the statute governing discipline of federal prosecutors, 28 U.S.C. § 530B, and Auerhahn's constitutional right to due process. Further, duplicating the investigation and threatening more discipline would compound the extensive, severe and unsanctioned discipline already inflicted on Auerhahn as a result of repeated publication by the Court of the allegations, despite OPR's rejection of them, which essentially subjected Auerhahn to a severe form of public censure without any process whatsoever. The publication of this material was unnecessary in the by-then resolved Ferrara v. United States, Civ. No. 00-11693-MLW ("Ferrara") and Barone v. United States, Civ. No. 98-11104-MLW ("Barone") cases. Under these facts, seeking a repetitive disciplinary process and harsher punishment – disbarment or suspension, as mandated by the Court – is fundamentally unfair. The nearly twenty-year old allegations in this case have been fully and fairly resolved by a process sought by the Court five years ago. This matter thus should be, finally, dismissed.

## FACTS

### A.   Court's Adoption of OPR's Disciplinary Process

On or about September 30, 2003, prior to this Court's rulings on then-pending motions

brought pursuant to 28 U.S.C. § 2255 by Vincent Ferarra and Pasquale Barone, United States

Attorney Michael Sullivan requested that OPR conduct an investigation into alleged professional

misconduct by Auerhahn.[2]  The misconduct at issue concerned statements made during trial

preparation and at the Barone trial given between September 8 and 23, 1993 by Walter Jordan, a

government witness.  Petition ¶ 77.  By letter dated October 2, 2003, Sullivan informed the Court

that he had requested that OPR "conduct a thorough review of the record of these proceedings

and such additional investigation as it may deem appropriate and necessary … Until such an

exhaustive investigation has been completed … I would respectfully submit that any findings or

conclusions about these serious allegations – whether by this office, the Justice Department, or

the Court – would be premature."  See Letter, Exhibit ("Ex.") A, A1-A2.[3]

　　By an order placed on public file in Barone and Ferrara,[4] the Court made public a letter to

then-Attorney General Alberto Gonzales dated December 8, 2006.  In it, and as confirmed in

later correspondence from the Court and an opinion in an unrelated matter, the Court chose to

rely upon OPR to investigate and discipline Auerhahn,[5] adopting the OPR process as the

---

[2] OPR is an organization within the Department which is vested with the authority to investigate allegations of misconduct by federal prosecutors.  See Attorney General Order No. 1931-94; 28 C.F.R. § 0.39a(a)(1) (2009) (OPR is to "receive, review, investigate and refer for appropriate action allegations of misconduct involving Department attorneys"); Id. at § 0.39a(a)(3) (OPR is to "make recommendations for disciplinary and other corrective action … when appropriate").

[3] Documents cited herein are attached to the Declaration of Michael D. Ricciuti at Exhibit A and have been filed in Barone and Ferrara.  In ruling on a motion to dismiss, a court may review matters of public record, In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003), as well as "documents the authenticity of which are not disputed by the parties … documents central to plaintiff's claim;" and "documents sufficiently referred to in the complaint." Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).

[4] The Court filed letters to and from the Department as attachments to orders in cases resolved more than a year earlier without a motion or request by any party.

[5] The judge in this action was personally involved in creating OPR while a Department attorney.

investigatory process that would address Auerhahn's alleged misconduct:

> Canon (B)(3) of the Code of Conduct for United States Judges states that "a judge should initiate appropriate action when the judge becomes aware of reliable evidence indicating the likelihood of unprofessional conduct by a … lawyer." *Therefore, I am writing to bring this matter to your attention in the hope that further action by me will not be necessary … I hope and trust that directing this matter to your attention now that the <u>Ferrara</u> case is concluded will prove to be sufficient to satisfy my obligation to initiate appropriate action concerning misconduct by a lawyer.*
>
> To facilitate consideration of this matter I have enclosed the <u>Ferrara</u> and <u>Barone</u> decisions, and the other documents referenced in this letter … *I am also sending a copy of this letter and the enclosures to the other officials of the Department of Justice who I understand have responsibility for taking action concerning Mr. Auerhahn.*

<u>See</u> Letter, Ex. A at A3-A4, A8-A9 (emphasis added); <u>see also</u> 1/2/08 Letter to Attorney General Mukasey, Ex. A at A43 (the Court noting that federal judges "*rely upon the Department [of Justice]* to investigate and sanction misconduct by federal prosecutors") (emphasis added); <u>United States v. Jones</u>, 620 F. Supp. 2d 163, 176-77 (2009) (questioning whether the Court "should *continue to rely* upon the Department to investigate and sanction misconduct by federal prosecutor" because "[n]either referral to OPR, other disciplinary bodies, or public criticism has sufficiently deterred prosecutorial misconduct") (emphasis added).

In conducting its investigation, "OPR attorneys reviewed the FBI's case files and the United States Attorney's Office's (USAO) case files, the transcripts of the <u>Barone</u> trial, and the testimony and evidence adduced in connection with the Section 2255 motions. In addition, OPR attorneys interviewed most of the principal witnesses." <u>See</u> 10/2/07 Letter from D. Margolis, Ex. A at A54. On January 10, 2005, OPR issued a 112-page report, setting forth its findings of fact, analysis, and conclusions. <u>Id.</u> In it, OPR found that Auerhahn acted in reckless disregard of discovery obligations by not adequately documenting the circumstances surrounding statements made by a witness, Walter Jordan, to an investigator, Martin Coleman, during pretrial

preparation sessions in 1991, but found no intentional professional misconduct.  See 1/23/07 and 1/2/08 Letters from and to D. Margolis, Ex. A at A22, A48.  OPR also found that Auerhahn exercised poor judgment by failing to fully comply with an order that he submit his notes of the meetings with Jordan for an *in camera* inspection by the Court for potentially exculpatory information.  Ex. A at A22.  As a result of OPR's investigation, Auerhahn was privately disciplined by United States Attorney Michael Sullivan in the form of a written reprimand, a sanction within the range of OPR's recommended discipline.  See Ex. A at A43.

### B.    Court's Publication Of Allegations and Discipline Taken Against Auerhahn

In response to the Court's December 8, 2006 letter to Attorney General Gonzales, Associate Deputy Attorney General David Margolis wrote to the Court on January 23, 2007 and informed the Court that "the OPR report of investigation concluded that AUSA Auerhahn engaged in professional misconduct and exercised poor judgment in connection with the Barone and Ferrara cases, and disciplinary action was taken against him."  See Ex. A at A22.

Some six months later, by letter dated June 29, 2007, the Court wrote to Attorney General Gonzales informing him that the Court was initiating the Local Rule 83.6 process because the Court was dissatisfied that OPR disagreed with the Court's view of Auerhahn's conduct.  In the letter, the Court did not complain about any failures in the OPR process; on the contrary, the Court *relied* on portions of the OPR findings in its letter, quoting extensively and approvingly from the theretofore-confidential OPR report.  See 6/29/07 Letter to Attorney General Gonzales, Ex. A at A24-A27 (noting that the Department, through OPR, "agrees that Mr. Auerhahn engaged in professional misconduct" and had "reached a similar conclusion" to that of the Court");[6] see also, e.g., Ex. A at A44 (quoting OPR Report).  Instead, the Court wrote:

---

[6] The Court noted that the Department had provided the OPR report to the Court with a request that "[b]ecause OPR reports are highly confidential, I request that you not disclose or release any

> *I am writing now to inform you that the Department of Justice's response to Mr. Auerhahn's misconduct is not, in my view, sufficient … the previously secret reprimand is not, in my view, an adequate sanction … Therefore*, I have initiated the United States District Court's disciplinary process … In my view, a mere secret, written reprimand by the United States Attorney would not ordinarily be a sufficient sanction for the serious, intentional, repeated, and consequential misconduct by Mr. Auerhahn that I found …

Id. at A23, A24, A29 (emphasis added).  In subsequent letters, the Court argued that the Code of Conduct for United States Judges allowed it to assess the results of the OPR process to determine, after the fact, whether that process had been "appropriate," and re-emphasized that the Court had initiated this proceeding solely because it was dissatisfied with OPR's result, and not its process.[7]  For instance, in its letter to Bar Counsel issued on June 29, 2007, the same day as the letter to Gonzales, the Court wrote:

> For reasons described in the enclosed June 29, 2007 letter from me to Attorney General Alberto Gonzales, *I have concluded that merely relying upon United States Attorney Michael Sullivan's reported reprimand of Mr. Auerhahn would not be sufficient* to satisfy the requirement that "[a] judge … initiate appropriate action when the judge becomes aware of reliable evidence indicating the likelihood of unprofessional conduct by a … lawyer."  Canon 3B(3) of the Code of Conduct for United States Judges.

6/29/07 Letter to C. Vecchione at 1; Ex. A at A31.  Similarly, in a letter to Attorney General Michael Mukasey dated January 2, 2008, the Court wrote that "I initiated United States District Court disciplinary proceedings against [Auerhahn] … *because* of the *inadequacy of the*

---

portion of this report."  See Ex. A at A24.  Although the Court did not release the report, it did quote extensively from it in its letter, which was publicly filed.

[7] See Margolis Letter, Ex. A at A54 (noting that the Court's June 29, 2007 letter to Margolis "expresses dissatisfaction with the results of the disciplinary process … [Y]our displeasure with the discipline imposed by the Department appears to reflect the differences between OPR's findings and the more serious findings made by your Honor.  The discipline imposed was gauged by reference to *OPR's* findings regarding the nature and extent of Mr. Auerhahn's conduct; and the discipline imposed by the Department was consistent with, correlated to, and proportional with the findings that resulted from OPR's investigation").

*Department of Justice's response…the inadequacy of the Department's response* compelled me

to initiate disciplinary proceedings." Ex. A at A42-A43 (emphasis added).  The Court added that

"the Department's performance in the Auerhahn matter raises serious questions about *whether*

*judges should continue to rely upon the Department to investigate and sanction misconduct by*

*federal prosecutors*… I sadly doubt that [OPR] is now capable of serving its intended purpose."

Id. at A43-A44 (emphasis added); see also 4/23/09 Letter to Attorney General Holder, Ex. A at

A58 ("disciplinary proceedings I initiated in 2007 against [Auerhahn resulted from] … the

Department's inadequate response to his misconduct").  The Court added in a letter to Associate

Deputy Attorney General Margolis, also dated January 2, 2008, that "*the Department of Justice's*

*inadequate response* to the serious misconduct of Assistant United States Attorney Jeffrey

Auerhahn *required that I initiate disciplinary action against him … your response reinforces my*

*belief that…OPR…has not properly performed its intended function in this matter* … despite the

hopes that Attorney General Levi and I shared when OPR was established, *the Department*

*cannot now be relied upon to impose appropriate discipline for serious misconduct by a federal*

*prosecutor.*"  1/2/08 Letter to D. Margolis, Ex. A at A48, A51 (emphasis added).

In addition, the Court supported its decision to initiate a second disciplinary process

against Auerhahn because it was displeased with the Department in three respects, all matters

well beyond the control of Auerhahn.  First, it was troubled that the United States Attorney

"praised" Auerhahn, including by describing him as "a career prosecutor who's dedicated his

career to public service."  See, e.g., Ex. A at A24, A27.[8]  Second, it complained that the

Department "continued to argue repeatedly positions [in the First Circuit] that had already been

rejected by OPR."  See id. at A27; A44; A51-A52 ("the Department's failure to be candid and

---

[8] It is unclear why this factual statement, which is free of any positive assessment of Auerhahn's
job performance, was described by the Court as praise.

consistent with the courts has become disturbingly common in the District of Massachusetts," and a "grave problem"); see also id. at A54-A55. "[T]he failure of the Department of Justice to satisfy its duty of candor to the court in its litigation of the Ferarra case after OPR made its previously undisclosed findings reinforces my conclusion that it is important that I invoke the District Court's disciplinary process in order to discharge my responsibility under Canon 3B(3) 'to initiate appropriate action.'" Id. at A29-A30. Third, the Court argued that the Department took inconsistent and unjust positions in civil cases related to organized crime, including the FBI's "complicity in framing Joseph Salvati … [who was] wrongfully convicted of murder and initially sentenced to death … misconduct … [which] was matter of national concern." See id. at A45-A46; A59-A60.

The Court's June 29, 2007 letter to Bar Counsel, issued at the same time of the letter to Gonzales, disregarded OPR's result and instructed Bar Counsel to prosecute Auerhahn for misconduct it had already found, and that suspension or disbarment was the appropriate sanction:

> I am writing to you to initiate the prosecution of formal disciplinary proceedings against Assistant United States Attorney Jeffrey Auerhahn for the *professional misconduct proven before me* … described below[9] … the substantial evidence analyzed in my [prior] decisions provides far more than probable cause for the initiation of a formal disciplinary proceeding to determine whether any facts are in dispute, and whether Mr. Auerhahn should be suspended or disbarred from practice before the United States District Court for the District of Massachusetts. See L.R. 83.6(5)(C) and 83.6(4)(A).[10]

---

[9] As it did in its letters to the Department, the Court reviewed its own conclusion that Auerhahn "intentionally engaged in professional misconduct [and] also found that Mr. Auerhahn's testimony in 2003 may have been perjurious," noted that the Court had reached but had previously withheld from the public its "conclusion that Mr. Auerhahn's misconduct was intentional," and reviewed the First Circuit's opinion "affirm[ing] my decision … characterizing Mr. Auerhahn's actions as 'egregious.'" Id. at A32 and A33 n.2.

[10] One of the rules cited by the Court, Local Rule 83.6 (4)(a), states that the possible penalties are disbarment, suspension, reprimand or "such other disciplinary action as the circumstances may warrant." The Court's direction to Bar Counsel to consider only disbarment or suspension thus purports to limit the scope of possible penalties it could consider.

Id. at A31-A32.  Surprisingly, the Court relied on, and quoted extensively from, the OPR report

it had criticized in its letter to Gonzales to support the Court's instruction to Bar Counsel to

prosecute Auerhahn:

> In addition, I have been advised by the Department of Justice that [OPR]
> … found in a January 10, 2005 report that Mr. Auerhahn engaged in
> professional misconduct in the Ferarra and Barone cases … OPR found
> that Mr. Auerhahn had withheld material, exculpatory information.

Id. at A31, A37.  The Court's letter contained nearly a page of quotes from the previously

theretofore confidential OPR report.  See id. at A37-A38.[11]

### C.   Media Coverage Of The Auerhahn Allegations

Following the 2255 hearings and publication of the Court's letters, allegations of

Auerhahn's purported violation of the ethical rules, despite OPR's finding to the contrary, have

appeared in the media, including the ABA Journal, the Boston Globe, and websites, virtually all

of which have reported the Court's allegations, especially the most serious ones rejected by OPR,

and the formerly confidential OPR findings.  These publications are attached to the Ricciuti

Declaration at Exhibit B.  Many have been extraordinarily harsh toward Auerhahn.  Various

news stations and blogs also reported on Auerhahn's conduct.[12]  As an example of the depth and

---

[11] The Court's criticism of Auerhahn continued in court orders on matters unrelated to the
Barone and Ferrara proceedings.  See United States v. Jones, 609 F. Supp. 2d 113, 119, n.3 (D.
Mass. 2009); Jones, 620 F. Supp. 2d at 169, 175-76, 183.

[12] See, e.g., "'The Animal' Released from Prison," (May 26, 2005, available at
http://www.thebostonchannel.com/news/4537611/detail.html); "Prosecutor Disciplined For
Conduct In Mob Cases," (Feb. 1, 2007, available at
http://wbztv.com/iteam/i.team.Maggie.2.584865.html).  At least one video of a news report
concerning, in part, Auerhahn's alleged misconduct still exists online for the public to view.  See
"David Boeri Reports On Release [of Ferrara]" (available at
http://www.thebostonchannel.com/video/4537679/index.html).  Several blogs also address these
allegations. See, e.g., http://www.talkleft.com/story/2007/7/3/175639/1808; http://mob-
news.blogspot.com/2007_07_06_archive.html; http://blogs.wsj.com/law/2007/07/03/boston-
judge-critizes-conduct-of-us-prosecutor.

breadth of the criticism, Auerhahn is listed as number five on the "10 Worst Prosecutors List" for 2007.[13]  Auerhahn's alleged misconduct is even included in the organized crime section of Wikipedia.[14]

## **ARGUMENT**[15]

### I.     **THIS ACTION IS BARRED AND SHOULD BE DISMISSED**

#### A.     **This Action Should Be Time Barred**

In this case, the four-year "catch-all" statute of limitations should apply, such that this action is time barred.

This action arises under 28 U.S.C. § 530B(a), a 1998 federal statute which imposed state ethical standards on Assistant United States Attorneys.  See 28 U.S.C. § 530B(a) ("[a]n attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State").  The state ethical rules cited in the Petition apply to Auerhahn by virtue of § 530B.  See United States v. Reid, 214 F. Supp. 2d 84, 94, n.7 (D. Mass. 2002).  There is no statute of limitations expressly stated in §530B (or, for that matter, in Local Rule 83.6).  Where that is the case, the "catch-all" four year statute of limitations applies where, as here, the statute under which this action arises was enacted after December 1, 1990.  See 28 U.S.C. § 1658(a) ("[e]xcept as otherwise provided by

---

[13] See http://bennettlawfirm.typepad.com/badprosecutors/2007/08/the-bennett-law.html.

[14] See http://en.wikipedia.org/wiki/2005_in_organized_crime.

[15] A motion to dismiss is an appropriate procedural device for challenging the merits of the Petition.  See Callahan v. Board of Bar Overseers, 417 Mass. 516, 518 (1994) (noting that a complainant does not have standing to appeal a decision to dismiss Bar Counsel's complaint for professional misconduct).  To survive a motion to dismiss, the Petition must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009); Rule 12(b)(1), Fed. R. Civ. P.

law, a civil action arising out of an Act of Congress enacted after [December 1, 1990] … may not commence later than 4 years after the cause of action  accrues"); see Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 381-82 (2004) (where claims made possible by a post-1990 enactment, the four-year statute of limitations applied under § 1658); O'Neil v. Putnam Retail Mgmt. LLP, 407 F. Supp. 2d 310, 314 (D. Mass. 2005) (same).

This action was thus untimely filed and is therefore barred.  The conduct alleged here occurred no later than September 23, 1993, the last date of Jordan's testimony – and by which time the Court asserts it was aware of Auerhahn's alleged misconduct.  See Memorandum and Order, Dkt. No. 23, at 28 (alleged misconduct was revealed during Barone trial in 1993).  Thus, this action was due to be filed by September 23, 1997.  Even if the discovery rule applies to toll that period,[16] the Court (and complainant here) was apprised, in writing, of Jordan's allegations against Auerhahn on August 28, 2002.  See Notice, August 28, 2002, Civ. No. 02-MBD-10235. Even under this analysis, this action was due to be filed no later than August 28, 2006, and was late by exactly three years.

On these facts, this action is untimely and thus should be dismissed.  See O'Neil, 407 F. Supp. 2d at 314 (dismissing causes of action as untimely pursuant to § 1658).[17]

---

[16] Under the discovery rule, a claim accrues when the party has knowledge of both the injury and its cause.  United States v. Kubrick, 444 U.S. 111, 120-22 (1979); Callahan v. United States, 426 F.3d 444, 451 (1st Cir. 2005) ("Accrual is triggered by the discovery of sufficient facts about the injury and its cause to prompt a reasonable person to inquire and seek advice preliminary to deciding if there is a basis for filing [a]... claim" (internal quotation marks omitted)).

[17] Bar Counsel may claim that she is permitted to investigate allegations "occurring more than six years prior to the date of the grievance" filed with the BBO.  See Rules of the Board of Bar Overseers, § 2.1(b)(1).  That rule is inapplicable here.  Although it permits Bar Counsel to investigate matters older than six years when brought before the BBO, it does not provide a statute of limitations for a federal action brought pursuant to a federal statute.

**B.      Even Were It Timely, This Action Should Be Barred By § 530B**

Even were this case timely filed, it would be barred by the federal statute which prohibits imposing a unique disciplinary structure on federal prosecutors.  In this case, the Court, through Bar Counsel, seeks to pursue another investigation of the same charges that were fully investigated and addressed by OPR, the mechanism relied upon and adopted by the Court, and impose double (actually, as described below, *triple*) discipline on Auerhahn, solely because the Court disagrees with the result reached by the OPR process it had adopted.  To do so violates § 530B.

At the time "allegations of misconduct … [were] brought to the attention" of the Court, the Court chose to rely on OPR, one of an array of choices available to it.  See L.R. 83.6(5)(A).  Many of these disciplinary choices the Court could have chosen were identical for prosecutors as for members of the private bar – referral to the Board of Bar Overseers, institution of the Local Rule 83.6 process, or pursuit of contempt proceedings.  See Jones, 620 F. Supp. 2d at 176-77.  OPR, on the other hand, is unique to the Department and to federal prosecutors.

Courts routinely defer to the Department to police its own ranks through OPR; doing so does not implicate § 530B.  However, where, as here, the Court adopts the OPR process as the disciplinary authority relied upon to investigate and impose discipline,[18] and then ignores that result to apply those rules anew in a separate proceeding, § 530B is violated.  That section

---

[18] The Court need not have taken any action with respect to OPR, as the Department had already triggered that process, and could have proceeded on its own.  By adopting the OPR process to fulfill the Court's obligation to "initiate" a disciplinary process, the Court merged the OPR investigation with its own, effectively appointing OPR to conduct the investigation.  See L.R. 83.6(9) ("Whenever counsel is to be appointed pursuant to these rules to investigate allegations of misconduct … this court shall appoint as counsel the disciplinary agency of the highest court of the state … *or other disciplinary agency which the court deems suitable, including the United States Attorney*") (emphasis added).

requires prosecutors to be disciplined "*to the same extent and in the same manner as other attorneys in that State*" (emphasis added). Where, as here, the Court seeks to use OPR as a disciplinary "trial run," it subjects prosecutors to a unique form of civil double jeopardy which non-governmental lawyers do not face. See Stern v. United States Dist. Ct., 214 F.3d 4, 20 (1st Cir. 2000) (§ 530B prohibits district court, "in the guise of regulating ethics, to impose strictures that are inconsistent with federal law").

At the time it elected and endorsed the OPR process, the Court expressed its confidence that OPR was the appropriate investigatory entity; indeed, in this and other cases, the Court had noted the particular appropriateness of the OPR process to discipline prosecutors. It only altered that position when it disagreed with the result reached by OPR after its process was complete. The Court argued that it could ignore OPR's result because the Canons of Judicial Conduct empowered it to substantively assess the result of a disciplinary process to determine its "appropriateness." This is in error. Canons of judicial ethics cannot trump a statute (or, as discussed below, the constitutional principles which undergird it). Moreover, the canon cited by the Court itself undercuts the Court's argument. Canon 3B(3)(b) provides that "if a judge shall become aware of unprofessional conduct by a [lawyer] ... he shall initiate appropriate investigative or disciplinary measures." The commentary to that Canon makes clear that "appropriate action" means the court is to trigger an appropriate disciplinary process, not that it retains the power to assess its result and duplicate the process if it disagrees with it. See Commentary, Canon 3B(3) ("Appropriate action may include direct communication with the judge or lawyer who has committed the violation, other direct action if available, and reporting the violation to the appropriate authorities) (emphasis added).[19] The Canon's requirement is

---

[19] The revised canons, which came into effect on July 1, 2009, are to the same effect. See Code

*procedural*, not substantive; it obligates a judge only to initiate a process which is, *ab initio*, well-suited to the task.  It does not, and cannot, mean that the Court reserves the right to assess the result of that process, and the power to duplicate it if it disagrees.  See Ramos Colon v. U.S. Atty. for Dist. of Puerto Rico, 576 F.2d 1, 5-6 (1st Cir. 1978) (role of complainant in professional misconduct case is to "suppl[y] information for the court's consideration;" if "the [investigatory body] considers that no offense has been committed; or that the allegations of the complaint are insufficient, immaterial, impertinent or scandalous; … or for any other reason decides not to proceed with the matter, the complainant has no recourse"); Starr v. Mandanici, 152 F.3d 741, 747 (8th Cir. 1998) (same).  The Court thus does not retain the authority to ignore such a process simply because it dislikes the result.  See United States v. Vague, 697 F.2d 805, 807 (7th Cir. 1983) (district court exceeded its power when acting as both "prosecutor and judge," and acted to take "the place of the [disciplinary] committee" by ordering attorney to make restitution for what the judge ruled to be disciplinary violation); Joyner v. Comm'r of Corr., 740 A.2d 424, 434 (Conn. App. 1999) (Lavery, J., dissenting) (Canon 3B(3) "duty ended [by reporting attorney,] and he should not have made further inquiries or questioned the scope of the investigation conducted by the state's attorney"); see also In re Sheridan, 362 F.3d 96, 111 (1st Cir. 2004) (court in disciplinary proceeding should not "inappropriately act[] as accuser, investigator, prosecutor, and judge").

Lastly, the Court's view of Canon 3B(3) would not only ignore § 530B (and Auerhahn's due process rights, as described below), it would permit the Court to initiate endless disciplinary procedures unless and until some investigative body reached the result the Court wants.  Section 530B makes clear that that these tools cannot be used in series, one after another, until a result

of Conduct for United States Judges, 3B(5) and Commentary (appropriate action described in terms of procedure court should follow).

pleasing to the Court has been reached.  See Stern, 214 F.3d at 20.

Because application of the Local Rule 83.6(5) procedure here would create a duplicative process and impose duplicative punishment on Auerhahn in a manner and to an extent that would not exist for a member of the private bar in violation of § 530B, this action must be dismissed.

### C.   This Case Is Also Barred Under Constitutional And Equitable Principles

Proceeding again against Auerhahn violates his constitutionally-protected interest to due process which protects his interest in his license to practice law.  In re Ruffalo, 390 U.S. 544, 550 (1968); In re Kenney, 399 Mass. 431, 435 (1987) (an "attorney has a substantial property right in his license to practice law").

As demonstrated by the correspondence attached hereto, the Court relied upon OPR to conduct the investigation it sought of Auerhahn and to impose appropriate discipline.  OPR has done so.  Nothing suggests that OPR's procedure was not, and is not, constitutionally sound.[20]  It was laden with appropriate due process guarantees – Auerhahn was entitled to be represented, to submit to questioning, and to appeal any adverse finding within the department and beyond it. See OPR Policies and Procedures at Nos. 6-8, http://www.justice.gov/oper/polandproc.htm; Ex. A. at A54.  Imposition of a duplicative investigation and further, harsher discipline for the same conduct Auerhahn has already been investigated and disciplined for by OPR, at the Court's urging, would violate Auerhahn's right to fundamental fairness and due process.  See In re Dunietz, 756 A.2d 437, 438 (D.C. App. 2000) ("fundamental fairness surely dictates that a court

---

[20] Indeed, OPR's decision is entitled to substantial deference.  Kelly v. United States, 924 F.2d 355, 361 (1st Cir. 1991) (DEA OPR); Radack v. U.S. Dept. of Justice, 402 F. Supp. 2d 99, 107 n.7 (D.D.C. 2005) (courts give "great deference" to OPR interpretations in attorney misconduct cases); Pons v. Ezzel, No. 97-5260, 1998 WL 202250, at *1 (D.C. Cir. Mar. 9, 1998) (decision of the OPR "is unreviewable agency action committed to agency discretion by law") (citing 5 U.S.C. § 701(a)(2)); Heckler v. Chaney, 470 U.S. 821, 831 (1985).

may not discipline an attorney more than once for the same disciplinary violation");[21] see also, e.g., Com v. Travis, 372 Mass. 238, 249 (1977) ("as a matter of fundamental fairness under the due process clause … a finding that an individual is no longer sexually dangerous must be immune from subsequent or collateral attack as is a criminal judgment of acquittal").  Similarly here, seeking to discipline Auerhahn for conduct which has already been investigated and ruled upon by OPR – at the Court's direction – would be an impermissible form of double discipline.  See also Gartner v. Dep't of the Army, 104 M.S.P.R. 463, 466 (2007) (government employee cannot be disciplined twice for the same conduct).

Principles of estoppel also bar another investigation and imposition of discipline on Auerhahn for these same acts.  Collateral estoppel precludes "the relitigation of an issue determined in an earlier action when that issue subsequently arises in another action based on a different claim between the same parties or their privies."  In re Sonus Networks, Inc., 422 F. Supp. 2d 281, 287-88 (D. Mass. 2006).  Collateral estoppel applies where: (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; (3) the issue in the prior adjudication was identical to the issue in the current adjudication; (4) the issue was litigated in the prior action; and (5) the issue decided in the prior adjudication was essential to the earlier judgment.  Id. at 288.  In this case, OPR reached a determination, which is now final, both on

---

[21] The Dunietz case is instructive.  Dunietz, a member of the bars of Maryland and the District of Columbia, was found to have violated disciplinary rules by the District of Columbia Board of Professional Responsibility.  756 A.2d at 438.  The D.C. Court of Appeals heard the matter and imposed discipline upon Dunietz ("Dunietz I").  Id.  The Maryland disciplinary authorities subsequently initiated disciplinary proceedings against Dunietz based on the same conduct at issue in Dunietz I and for unrelated conduct.  The Maryland Court of Appeals disciplined Dunietz and referred the matter back to the D.C. Court of Appeals.  The D.C. Court of Appeals declined to consider the conduct for which Dunietz had already been punished, holding that it would be fundamentally unfair to discipline an attorney twice for the same conduct.  Id.

behalf of the Department and the Court.  The issues raised in this subsequent action are identical, and their resolution was central to the OPR finding.  This action is thus barred under collateral estoppel principles.  See, e.g., In re Cohen, 435 Mass. 7, 15 (2001) (permitting bar counsel's use of offensive collateral estoppel and noting that "the offensive use of collateral estoppel is appropriate in attorney disciplinary proceedings").

Similarly, the doctrine of judicial estoppel bars this action.  That principle prohibits a party from taking inconsistent positions to aid its cause.  Patriot Cinemas, Inc. v. Gen. Cinemas Corp., 834 F.2d 208, 212, 214 (1st Cir. 1987) (citing Hurd v. Dimento and Sullivan, 440 F.2d 1322, 1323 (1st Cir. 1971) (precluding party from adopting inconsistent positions without finding prejudice); Lydon v. Boston Sand & Gravel Co., 175 F.3d 6, 12-13 (1st Cir. 1999); see also Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004).  It thus prohibits a party from arguing one position and then arguing a different position to avoid the results of original position.  Lydon, 175 F.3d at 13 (party "cannot be permitted to circumvent its earlier agreement … that the existing dispute should be resolved in [one forum] … [and then argue that] claims should be heard in the other [forum]").  In this case, the Court elected to rely on OPR as the disciplinary mechanism, then confident of OPR's ability to investigate and impose discipline in this case.  The Court cannot now undo that choice because of its dissatisfaction with the result.  In this regard, the First Circuit's decisions in Patriot Cinemas, Inc. and Lydon are on point.  In both cases, a party chose one forum and sought to reverse that choice and seek an alternative forum.  The First Circuit determined that such action is not proper.  Patriot Cinemas, Inc., 834 F.2d at 214; Lydon, 175 F.3d at 13.  This Court should do so here.

Auerhahn was subjected to the OPR process, pursued by the Department and endorsed by the Court, as the sole mechanism to resolve the ethical issues raised here.  It is manifestly unfair

that he now faces the very real difficulties of re-litigating a case handled by OPR almost six years ago regarding events that occurred almost twenty years ago.[22]  This proceeding thus should be dismissed.

## II.   FURTHER PROCEEDINGS ARE UNJUST BECAUSE AUERHAHN HAS BEEN SUBJECT TO UNSANCTIONED PUBLIC CENSURE BY THE COURT

The Court's letters in this matter and judicial opinions in unrelated matters repeatedly and publicly labeled Auerhahn as unethical, re-alleging serious allegations rejected by OPR and disclosing theretofore confidential OPR material.  The net effect was to impose a severe public censure on Auerhahn without any process whatsoever.  Continuing this action to re-investigate and re-discipline him would be unjust and should not be permitted.

The Court's letters were filed publicly in the Barone and Ferarra cases, both of which had been resolved a year earlier.  In writing these letters, the Court was not engaging in routine judicial fact-finding or opinion writing, nor was the public censure the letters engendered supported by any process to protect Auerhahn's rights.  See also Canon 3B(11), Code of Judicial Conduct (judges should not disseminate information that would be expected to unnecessarily embarrass or otherwise harm any person participating in court proceedings).[23]  These orders, issued in the absence of a motion or request by the parties, were themselves improper.  Maher v. Hyde, 272 F.3d 83, 86 (1st Cir. 2001) (there must be an actual controversy between the parties at

[22] Of course, Bar Counsel's claims based on Rules 3.4 and 8.4 of the Massachusetts Rules of Professional Conduct must be dismissed.  Those rules came into existence in 1998, after the alleged conduct at issue, and do not apply.  In re Cobb, 445 Mass. 452, 453 n.1 (2005) (rules which took effect on January 1, 1998 apply to conduct occurring on or after that date).

[23] OPR requested that the Court "not disclose or release any portion of the report," because the OPR report was "highly confidential."  See Ex. A at A24 n.1.  The Court chose not to abide by that request.  This, too, was unsanctioned.  The decision whether to publicize any portion of an OPR report is reserved to the Attorney General after review by DOJ's Office of Privacy and Civil Liberties.  Ligorner v. Reno, 2 F. Supp. 2d 400, 403 (S.D.N.Y. 1998) ("it is the policy of OPR that any information provided to it, for purposes of an investigation, will be kept strictly confidential, and disseminated only on a need to know basis").

each and every stage of the litigation; "[w]hen a case is moot – that is, when the issues presented

are no longer live or when the parties lack a legally cognizable interest in the outcome – a case or

controversy ceases to exist, and dismissal of the action is compulsory"); Overseas Military Sales

Corp. Ltd. v. Giralt-Armada, 503 F.3d 12, 16-17 (1st Cir. 2007).

"[W]here an attorney has been subjected to a considerable period of public opprobrium

while awaiting formal discipline, the delay will have already inflicted an unofficial sanction." In

re Gross, 435 Mass. 445, 451-52 (2001); see also, e.g., Fla. Bar v. Randolph, 238 So.2d 635, 638

(Fla. 1970) (attorney suffered "professional embarrassment" and was "subjected to the stigma of

community suspicion and criticism" prior to resolution of disciplinary complaint); La. Bar Ass'n

v. Edwards, 387 So.2d 1137, 1139-40 (La. 1980) (delay in disciplinary proceedings "operated to

punish" attorney who was "subjected to years of public scrutiny, censure").  Public allegations of

serious ethical misconduct can cast dark shadows over an attorney's career.  See, e.g., McBryde

v. Comm. to Review Circuit Council Conduct, 264 F.3d 52, 81 (D.C. Cir. 2001) (noting that an

attorney's interest in an untarnished reputation is greater than the "mere loss of money") (Tatel,

J. concurring in part).  "Being branded unethical or incompetent by a federal judge can

essentially destroy a lawyer's career."  Williams v. United States, 158 F.3d 50, 50 (1st Cir. 1998)

(Lynch, J. dissenting); Walker v. City of Mesquite, Texas, 129 F.3d 831, 832 (5th Cir. 1997)

(stating, in action reversing finding of alleged professional misconduct of DOJ attorney, that it

was "beyond peradventure that one's professional reputation is a lawyer's most important and

valuable asset").

In this case, the disciplinary process was ongoing or completed at the time the Court

made repeated public statements regarding Auerhahn, and many of the Court's statements came

after OPR exonerated Auerhahn of the most serious of the allegations, which the Court repeated

publicly, and the media reported aggressively.  Because the public filings made by the Court re-alleged the most serious allegations against Auerhahn despite OPR's rejection of them, they predictably unleashed a torrent of searing, public criticism of Auerhahn over a three-year period, thus imposing a penalty of public censure on him.  See, e.g., United States v. Hasting, 461 U.S. 499, 506 n. 5 (1983) (listing public chastisement of errant attorney as a form of sanction for misconduct).  Indeed, this censure was not the equivalent of a public reprimand; it was a far more damaging, aggressive form of it.  Because Auerhahn received *no process whatsoever* before this sanction was imposed, it is plainly improper to proceed against him here, particularly regarding events which occurred *almost twenty years ago*.

Lastly, the Court supported its pursuit of discipline against Auerhahn in part because of its displeasure with the Department generally for matters well beyond Auerhahn's control.  It would be obviously unfair, and in derogation of Auerhahn's due process rights, were this action to proceed against Auerhahn so that he is punished for actions by his employer for which he had absolutely no responsibility.

## **CONCLUSION**

For the reasons set forth above, this Court should grant this motion and dismiss this case with prejudice, and grant such other relief as the Court deems just and equitable.

Respectfully submitted,

JEFFREY AUERHAHN

By his attorneys,

*/s/ Michael D. Ricciuti*
Michael DeMarco (BBO #119960)
Michael D. Ricciuti (BBO #550771)
Arnold R. Rosenfeld (BBO #428860)
Ryan M. Tosi (BBO #661080)
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
Tel. (617) 261-3100
Fax. (617) 261-3175
michael.demarco@klgates.com
michael.ricciuti@klgates.com
arnie.rosenfeld@klgates.com
Dated: November 25, 2009          ryan.tosi@klgates.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 25th day of November 2009:

Nancy E. Kaufman, Esq.
Office of Bar Counsel
99 High Street
Boston, MA 02110
Email: n.kaufman@massbbo.org

*/s/ Michael D. Ricciuti*
Michael D. Ricciuti
