**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| In the Matter of<br><br>JEFFREY AUERHAHN | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | MBD Action No. 09-10206-JLT<br><br>**ORAL ARGUMENT BEFORE<br>THREE-JUDGE PANEL REQUESTED**<br><br>**LEAVE TO FILE GRANTED 12/9/09** |

**JEFFREY AUERHAHN'S REPLY IN SUPPORT OF HIS
MOTION TO DISMISS PETITION FOR AND ORDER TO SHOW CAUSE**

Michael DeMarco (BBO #119960)
Michael D. Ricciuti (BBO #550771)
Arnold R. Rosenfeld (BBO #428860)
Ryan M. Tosi (BBO #661080)
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
Tel. (617) 261-3100
Fax. (617) 261-3175
michael.demarco@klgates.com
michael.ricciuti@klgates.com
arnie.rosenfeld@klgates.com
ryan.tosi@klgates.com

*Attorneys for Jeffrey Auerhahn*

Bar Counsel's opposition proceeds from three fundamental misconceptions which pervade her analysis.

First, Bar Counsel ignores the facts in this case.  As noted below, that mistake is critical, as the facts drive the conclusion that this action arises from 28 U.S.C. § 530B and hence the four-year catchall statute of limitations applicable through 28 U.S.C. § 1658 applies to bar this action.  Simply put, Bar Counsel claims that Auerhahn violated only state disciplinary rules in her Petition.  Those rules apply to federal prosecutors by virtue of 28 U.S.C. § 530B.  It follows that this action "arises under" that act of Congress, making the statute of limitations contained in 18 U.S.C. §1658 applicable here.

Second, Bar Counsel erroneously presumes that this action should be treated *exactly* the same as a state bar disciplinary action.  Dismissing the fact that this is a federal action before a federal district court under a federal local rule, Bar Counsel bypasses the legal framework for a federal action and assumes that the administrative and state guidelines and rules which would normally apply in matters pending before the Board of Bar Overseers ("BBO") equally apply here.  Bar Counsel's own memorandum implicitly recognizes that relying on state bar discipline guidelines and rules is fundamentally in error.  Bar Counsel cites United States v. Reid for the proposition that "the legal profession is regulated, *almost entirely,* by the judiciaries of the several states and not by the federal or state executive branches."  214 F. Supp. 2d 84, 94 (D. Mass. 2002) (Young, J.) (emphasis added, footnote omitted).  Bar Counsel's own logic thus recognizes that bar discipline at the federal level is critically different from state bar discipline.  Thus, the fact that there appears to be no recognized statute of limitations in a bar disciplinary proceeding before the BBO in Massachusetts is a matter of state law, and wholly irrelevant in this court.  That recognition only makes clear what Reid held, and what federal courts have held

generally for centuries, that state courts are courts of general jurisdiction, but federal courts are courts of limited jurisdiction. This action was not brought by Bar Counsel before the BBO, the state entity with expansive disciplinary authority; it has instead been brought before a federal court and therefore is subject to the familiar rules of federal procedure. Thus, it is not surprising that since it is a federal action, it is limited by a federal statute of limitations and other protections.

Third, Bar Counsel ignores the facts in this case regarding the Court's role in the disciplinary process. The Court not only directed and adopted the OPR process to investigate and potentially discipline Auerhahn, it expressly <u>relied</u> on OPR to do so. The Court's adoption and reliance on OPR had consequences. By using that process to discharge its obligation to investigate a claim of attorney misconduct, the Court merged the OPR investigation with its own. It thus bars this duplicative action.

Because this action is subject to federal rules, and those rules bar this action, this matter should be dismissed.

## **Argument**

### A.   **This Action Is Barred By The Four-Year Statute of Limitations**

Bar Counsel does not dispute that if the four-year statute of limitations provided under 28 U.S.C. §1658(a) applies to this action, this action is time barred. Under these facts, it is; Bar Counsel's attempts at finding some way around that bar are of no avail.

Bar Counsel's argument is premised on her errant assertion that this case does not arise under 28 U.S.C. § 530B. This argument is nonsensical in light of the facts of this case. Here, Bar Counsel has alleged that Auerhahn has violated state ethical rules. <u>See</u> Petition, ¶¶ 130-135. Indeed, Bar Counsel cites no other governing law but state ethical rules. <u>See id.</u> As Auerhahn asserted in his Memorandum in Support of his Motion to Dismiss (Dckt. No. 34)

2

("Memorandum"), those principles apply in this case by virtue of § 530B. See Memorandum at 10-11.

Bar Counsel's argument that § 530B did not create a new cause of action, and that Local Rule 83.6 already governed in this area, misses the point, as it confuses the procedural aspects of this case from the substantive. As Bar Counsel correctly notes, Auerhahn was subject to Local Rule 83.6 the day before § 530B was passed; had he violated some substantive standard other than a state ethical rule, he would have been subject to discipline pursuant to the process outlined in that rule. However, the day after § 530B was passed, Auerhahn, like all federal prosecutors, became subject to a new set of substantive standards – the state ethical principles of the state in which he practiced. Were this not true, the statute would be completely meaningless – indeed, under Bar Counsel's view, the law prior to the passage of § 530B was *precisely* what it was after passage of that law. This interpretation is plainly wrong;[1] federal law demands that every law passed by Congress – indeed, every *word* in every such statute – be given its plain and full meaning to properly reflect legislative intent. See, e.g., Kholi v. A.T. Wall, 582 F.3d 147, 153 (1st Cir. 2009) (Congressional statutes must be given effect; "the rule against superfluities ... instructs a court, in undertaking the interpretation of a statute, to give meaning whenever possible to every word and phrase in a statute's text").

Because Bar Counsel only alleges violation of substantive state ethical standards, this case must necessarily arise from § 530B as a matter of law. See In re Lucas, 317 B.R. 195, 205-06 (D. Mass. 2004) (Young, J.) (observing that Congress had not adopted a federal rule

---

[1] Bar Counsel argues that Auerhahn has cited no case which makes this clear. Although that is true, Bar Counsel's observation is the beginning, not the end, of the analysis. Bar Counsel's answer to this lack of clear authority is to rely on state standards. This is error, as those standards do not apply here. Instead, as Auerhahn argues, this Court should look to federal standards for guidance. Under those federal standards, this action is foreclosed by § 1658.

3

governing the "practice of law," noting that 28 U.S.C. § 530B "subject[ed] an attorney for the federal government not to uniform federal regulation, but to the 'State laws and rules, and local Federal court rules, governing attorneys in each State'"). Simply put, Bar Counsel's ability to bring this case as framed, alleging violations of state ethical rules in a federal action, was made possible by § 530B.[2] Bar Counsel's argument that this case "arises" under Local Rule 83.6 and the court's inherent authority, and her citations to Whitehouse v. United States Dist. Court for the Dist. of R.I., 53 F.3d 1349, 1355 (1st Cir. 1995) and Stern v. United States Dist. Court for the Dist. of Mass., 214 F.3d 4, 13 (1st Cir. 2000), miss the point.[3] Both of these cases pre-date §530B (Stern only addresses that statute briefly), and concern substantive, not ethical, requirements imposed on prosecutors. The issue in this case is whether Bar Counsel's reliance on state law <u>ethical</u> principles against a federal prosecutor was made possible by the provisions of § 530B. It plainly was. See Stern, 214 F.3d at 20; 28 C.F.R. § 77.1(b)("Section 530B requires Department attorneys to comply with state and local federal court rules of professional responsibility").[4]

Bar Counsel also argues that § 530B is not a "claims-creating" statute, and thus the Petition does not arise from the statute. See Opp'n at 5. This is in error, as well. It is true that §

---

[2] Auerhahn does not concede that Bar Counsel could have filed this action before the BBO. The OPR file reviewed by Auerhahn in November, 2009, reflects an April 20, 2005 letter from then-Bar Counsel Daniel Crane asking for the results of the OPR investigation. It appears Bar Counsel took no action based on the OPR results.

[3] Similarly, Bar Counsel's reliance on United States v. Klubock, 832 F.2d 664, 667 (1st Cir. 1987), which found by a divided First Circuit that the district court validly incorporated PF 15 into the local rules, is misplaced. Klubock was decided in 1987, prior to Congress's adoption of § 530B.

[4] Stern's analysis of § 530B is not to the contrary. 214 F.3d at 19-20. Stern recognized that § 530B "applies only to ethical standards," 214 F.3d at 20, making them, and not substantive standards inconsistent with federal law, applicable to prosecutors. That is exactly what is at issue here.

4

530B does not provide a plaintiff with a private right of action. See Perkins v. Lewis, No. 06-CV-2177, 2007 WL 1118723, at *4 (C.D. Ill. Apr. 10, 2007) (dismissing plaintiff's claim under 28 U.S.C. § 530B against police department); 28 C.F.R. § 77.5. But that is not what is at issue here. What Auerhahn argues, and what the legislative history of the statute supports, is that *but for* the enactment of § 530B, Bar Counsel, not a private party, would be prohibited from alleging violation of state ethical rules in the current Petition against Auerhahn, as she does. See 144 Cong. Rec. S12996-02 (1998) (statement of Sen. Abraham); 144 Cong. Rec. S12798 (1998) (statement of Sen. Hatch); The Ethical Standards for Federal Prosecutors Act of 1996: Hearing on H.R. 3386 Before the H. Comm. on the Judiciary, 104th Cong. (1996) (statement of Seth P. Waxman, Associate Deputy Attorney General). Thus, it follows that Bar Counsel's Petition must *arise* from § 530B, as that statute gave Bar Counsel the ability to pursue disciplinary action against Auerhahn for alleged violations of the state professional code of conduct.

Because this case must arise from § 530B, the question then becomes what statute of limitations applies. "As is often the case in federal civil law, there is no federal statute of limitations expressly applicable to the suit." Lavery v. Marsh, 727 F. Supp. 728, 730 (D. Mass. 1989) (O'Toole, J.), aff'd 918 F.2d 1022, 1027 (1st Cir. 1990). In such a case, "it is more appropriate to borrow a statute of limitations from a federal source than from a state source" because the Local Rule applicable to the action is a federal local rule, applicable to attorneys practicing in federal court. Id. at 732 (noting that in certain circumstances, state statutes of limitations "can be unsatisfactory vehicles for the enforcement of federal law" and that "[s]tate legislatures do not devise their limitations periods with [federal] interests in mind"). But here there is no need to "borrow" a state statute of limitations because to do so is unnecessary and

5

inappropriate.[5] See id. ("[t]o give [the absence of a statute of limitations in a state source] such weight as in practical effect to be decisive in this case would thus be in appropriate"); see also Jones v. R.R. Donnelly & Sons Co., 541 U.S. 369, 380 (2004) ("central purpose of § 1658 was to minimize the occasions" of borrowing from state statutes).

The claims made here were "made possible" by an Act of Congress (28 U.S.C. § 530B) which was passed after December 1, 1990, the effective date for purposes of § 1658. Because this case could not have been brought in the absence of 28 U.S.C. § 530B, § 1658 establishes the applicable statute of limitations, which is four years. See 28 U.S.C. § 1658(a); Jones, 541 U.S. at 381-83 (in interpreting §1658, a matter "aris[es] under" an Act of Congress when that Act makes claims possible, and four-year statute of limitations under § 1658 applies); O'Neil v. Putnam Retail Mgmt. LLP, 407 F. Supp. 2d 310, 314 (D. Mass. 2005) (same). Thus, this case is untimely.

Bar Counsel further resists this result, alleging that this proceeding is not a civil action within the scope of § 1658 and thus no statute of limitations applies here, citing no federal authority for this claim (and her citation to state law from New Jersey, Florida, Arizona, and Delaware is simply unhelpful). Federal courts have treated such federal disciplinary cases as civil actions. See In re Barrish, 287 Fed. App'x 973, 974 (3d Cir. 2008) (action under the District Court of Pennsylvania's Local Rule 83.6; attorney who missed deadline to appeal from decision of three-judge panel that suspended him was barred because "[i]n a civil case," Fed. R.

---

[5] Moreover, as Bar Counsel would have it, there is no statute upon which the Court could even borrow, as the statute of limitations over bar discipline in Massachusetts is governed by BBO rules only.

6

App. P. 4(a)(1)(A) allows only 30 days from when the judgment is entered to file action).[6] This is unsurprising, as these proceedings are conducted before a three-judge panel of a federal court, and not by a hearing officer or administrative agency, as in state bar practice.[7]

It is important to note that Bar Counsel's bald claim that "no statute of limitations is applicable to these proceedings" (Opp'n at 6) is unsupported by any federal law, and would be an unusual result in federal practice, where an absence of a statute of limitations is reserved for murder cases and few others. To the extent this is the state practice, that fact is unhelpful. It is a "basic principle[]" of federal law that "rules regulating attorney conduct in federal court are strictly a matter of federal law." See In re Lucas, 317 B.R. at 204 (citing In re Sheridan, 362 F.3d 96, 109 n.16 (1st Cir. 2004)). "[S]tate rules govern[] practice in *state* courts; they d[o] not suggest that 'state rules govern practice in *federal* courts.'" In re Lucas, 317 B.R. at 208. Those federal principles provide an answer – a four-year statute of limitations.

Further, there is a more fundamental reason why Bar Counsel's argument that no statute of limitations should apply is erroneous. As Bar Counsel properly notes, this Court has recognized that "the legal profession is regulated, *almost entirely,* by the judiciaries of the several states and not by the federal or state executive branches." Reid, 214 F.Supp. 2d at 94

---

[6] Cf. In re Loeb, 315 Mass. 191, 193 (1943) (attorney "[d]isciplinary proceedings are at law, not in equity, and appellate procedure in them ordinarily is governed by the statutes regulating practice in civil actions at law as far as they are applicable").

[7] Further, Bar Counsel's citation to Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432-34 & n.12 (1982) for the claim that this proceeding is neither civil nor criminal is inaccurate. There, the Supreme Court found that bar disciplinary actions are "judicial in nature" thus warranting Younger abstention; the comment that bar discipline was "neither criminal nor civil" was the characterization of the New Jersey Supreme Court of state-based bar disciplinary proceedings, not that of the Supreme Court or a federal court disciplinary proceeding. Id. at 433-34 & n.12; see also In re Ruffalo, 390 U.S. 544, 551 (1968) (finding state bar disciplinary proceedings as "quasi-criminal" and applying due process principles applicable to civil and criminal cases to bar disciplinary proceedings).

7

(emphasis added, footnote omitted); see also Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432-34 (1982) (recognizing state obligation to regulate lawyers admitted to the state bar).  There can be no question that the strong state interests over bar discipline would warrant a system with few restrictions.  Expansive, or even absent, statutes of limitations on state attorney discipline thus allow state courts – courts of general jurisdiction – to address lawyer conduct issues.  Id. at 434 ("States traditionally have exercised extensive control over the professional conduct of attorneys") (citation omitted).  It is plainly unnecessary, and in conflict with federal law, for a federal court – a court of limited jurisdiction – to assume the same power.  In re Ruffalo, 390 U.S. 544, 547 (1968) (state bar proceeding entitled to respect but not biding on federal court).  Nor should it here.  Local Rule 83.6 expressly permits the court to impose reciprocal discipline on attorneys based on the discipline imposed "by a court of any state."  See Local Rule 83.6(2)(A) and (B).  Since federal prosecutors must be a member of one or more state bars which enjoy these expansive powers, there is no need to ignore the statute of limitations applicable to a proceeding such as this.  Accordingly, because Bar Counsel failed to bring this federal action within the limitations period applicable to federal proceedings, the proceeding is barred and the Petition should be dismissed as untimely.

      **B.**      **This Action Is Barred Under 28 U.S.C. § 530B And Is Duplicative Of OPR's Process**

Even were this case timely filed, it would be barred under 28 U.S.C. § 530B, which prohibits imposing a unique disciplinary structure on federal prosecutors.  Bar Counsel's argument that Judge Wolf did not adopt the OPR process, and that this action therefore is not barred under § 530B, see Opp'n at 8-9, is factually and legally incorrect.

As detailed in Auerhahn's Memorandum, the Court was initially apprised of OPR's investigation by U.S. Attorney Michael Sullivan, in written correspondence to the Attorneys

8

General of the United States. Although the Court[8] noted in 2003 that it was still considering making its own referral of the matter, the record shows that the Court subsequently did not, but rather adopted and appointed OPR to address the purported misconduct by Auerhahn. See Mem. at 1, 3-4; see also Ex. A to Mem. at A8 ("I hope and trust that directing this matter to your attention now that the Ferrara case is concluded will prove to be sufficient to satisfy my obligation to initiate appropriate action concerning misconduct by a lawyer"); id. at A43 (federal judges "rely upon the Department to investigate and sanction misconduct by federal prosecutors"). Indeed, after it had done so, the Court questioned whether its reliance was misplaced and whether it should rely on mechanisms such as Local Rule 83.6 in the future. See id. at A43 (questioning "whether judges should continue to rely upon the Department to investigate and sanction misconduct by federal prosecutors"); United States v. Jones, 620 F. Supp. 2d 163, 176-77 (2009) (questioning whether the Court "should continue to rely upon the Department to investigate and sanction misconduct by federal prosecutors"). In short, not only did the Court "direct" the matter to OPR's attention, it expressly "relied" on OPR to decide whether and how Auerhahn should be disciplined. It is this adoption and reliance on OPR which operates to bar the instant proceeding.

Apparently recognizing the legal significance of the Court's reliance on OPR, Bar Counsel ignores these facts, and suggests that the Court simply "defer[ed]" to OPR. Opp'n at 8. Such a claim is undermined by the facts above, as well as by the Court's comments after it received OPR's results and decided that OPR did not sufficiently sanction Auerhahn and that the

---

[8] Bar Counsel's claim that somehow a judge (much less the Chief Judge) of this Court is not the "Court" for purposes of discipline is sophistry. Any judge of this Court has many mechanisms of discipline over prosecutors which are available to him or her – public disclosure of alleged wrongdoing, a referral to OPR, a referral to the BBO, or Local Rule 83.6 proceedings. A judge acts for the Court in utilizing any of these tools, as the resulting discipline will apply to all sessions of this Court, not to just that of the complaining judge.

9

investigation would be re-opened to seek further punishment.[9]  See Ex. A at A48, A51 ("OPR … has not properly performed its intended function in this matter … despite the hopes that Attorney General Levi and I shared when OPR was established, the Department cannot now be relied upon to impose appropriate discipline for serious misconduct by a federal prosecutor"); Ex. A at A31 ("I have concluded that merely relying upon United States Attorney Michael Sullivan's reported reprimand of Mr. Auerhahn would not be sufficient"); Ex. A at A23, A24, A29 (initiating Local Rule 83.6 proceeding only because "the Department of Justice's response to Mr. Auerhahn's misconduct is not, in my view, sufficient … the previously secret reprimand is not, in my view, an adequate sanction"); Ex. A at A58 ("disciplinary proceedings I initiated in 2007 against [Auerhahn resulted from] … the Department's inadequate response to his misconduct").

Bar Counsel also claims that because OPR apparently did not consider itself to be conducting the Court's investigation, Opp'n at 9, and that it did not timely report the results to Judge Wolf, Opp'n at 10, that this subsequent proceeding is proper.  Bar Counsel again misses the point.  It is not OPR's conception of its role that is critical here, but the Court's.  The Court delegated this matter to OPR and relied upon it to investigate and, if appropriate, discipline Auerhahn.  It did so.

As she does regarding § 530B, Bar Counsel essentially argues that this process, too, was a nullity.  It was not; the Court's election to rely on OPR had consequences.  By adopting the OPR process to fulfill the Court's obligation to "initiate" a disciplinary process, the Court

---

[9] That the Court did not put its October 3, 2003 Oral Order and Findings in writing until two years later has no bearing on whether it had "made a decision to institute disciplinary proceedings."  Further, the Court noted that Sullivan only *"implicitly"* urged it not to take disciplinary action (see Ex. A at A3) (emphasis added).  Moreover, the Court was not required to rely upon OPR, but rather could have ignored that process or instituted a parallel disciplinary process, such as with the BBO.  It did not do that; it instead adopted OPR's process as the mechanism by which Auerhahn would be disciplined.

essentially merged the OPR investigation with its own, effectively appointing OPR to conduct the investigation.  See L.R. 83.6(9) ("Whenever counsel is to be appointed pursuant to these rules to investigate allegations of misconduct … this court shall appoint as counsel the disciplinary agency of the highest court of the state … *or other disciplinary agency which the court deems suitable, including the United States Attorney*") (emphasis added).[10]  The Court cannot now appoint Bar Counsel to conduct the same investigation OPR had conducted because the Court does not like the result of the first appointment.  To do so would subject a federal prosecutor to a process which other attorneys at the federal bar are not subject, in violation of § 530B[11] as well as for reasons of fundamental fairness as set out below.

### C.  Proceeding In This Action Would Violate Auerhahn's Due Process Rights

Bar Counsel ignores that proceeding against Auerhahn in this case, where Auerhahn has already been disciplined by OPR, would violate his constitutionally-protected interest to due process and the principles of fundamental fairness.  See In re Ruffalo, 390 U.S. at 550; In re Kenney, 399 Mass. 431, 435 (1987).

Bar Counsel argues that the cases cited by Auerhahn, specifically In re Dunietz, 756 A.2d 437, 438 (D.C. App. 2000) and Gartner v. Dep't of the Army, 104 M.S.P.R. 463, 466 (2007), are inapposite because those cases involved the imposition of discipline by the *same* judicial or administrative body.  Bar Counsel's argument fails.  Since the Court adopted the OPR process, it would be the same body that would be seeking to re-investigate and re-discipline Auerhahn all

---

[10] Indeed, Bar Counsel also apparently relied on the OPR investigation when it chose not to bring any charges against Auerhahn in 2005.  See n.3, supra.

[11] In this regard, Bar Counsel mischaracterizes Auerhahn's argument regarding the impact of OPR's investigation and resulting disciplinary action when she claims that Auerhahn argued that OPR somehow "preempted" this action.  Opp'n at 9.  Nowhere has Auerhahn argued that this process is preempted by OPR, but rather, that on these facts, the Court committed itself to an approach that cannot simply be ignored.

over again in this case.  As the cases above reflect, such double discipline is improper.  Although Bar Counsel is the party that filed the Petition, Bar Counsel did so at the Court's directive and, under Local Rule 83.6(9), acts on behalf of, and as an appointee of, this Court.  In truth, under Local Rule 83.6(9), Bar Counsel is merely a conduit for the Court to bring further disciplinary action against Auerhahn.

For these same reasons, these actions are barred by collateral and judicial estoppel, as Auerhahn previously argued.  In this case, the Court appointed OPR as the disciplinary authority responsible for the investigation and discipline of Auerhahn.  In doing so, the Court chose OPR to act as its agent, and as a litigant on its behalf, essentially adopting the OPR process as the legal proceeding through which it sought to impose discipline upon Auerhahn.  It is undisputed that OPR conducted a very thorough investigation during which substantial evidence was collected, reviewed, and analyzed.  Auerhahn himself was subject to questioning, afforded the right to obtain counsel (which he declined), and presented testimony on the record.  At the conclusion of the proceedings, OPR issued its final determination on the merits of Auerhahn's case, finding that Auerhahn had not committed intentional misconduct and that he should be disciplined via private written reprimand.  Auerhahn appealed the decision of OPR, but his appeal was unsuccessful.

Throughout this entire investigatory and adjudicatory period, the Court allowed the OPR process to proceed without its intervention.  At no point did the Court question the validity of the OPR proceedings or object to their legitimacy.  It was not until OPR reached a final judgment as to Auerhahn's alleged misconduct that the Court, as a result of its dissatisfaction with OPR's findings, called into question the OPR process and sought an alternative method to initiate duplicative disciplinary proceedings against Auerhahn.  This, the Court cannot do.  Under these

facts, the principles of estoppel should apply to bar the current disciplinary action. See Patriot Cinemas, Inc. v. Gen. Cinemas Corp., 834 F.2d 208, 212, 214 (1st Cir. 1987); see also Lydon v. Boston Sand & Gravel Co., 175 F.3d 6, 12-13 (1st Cir. 1999).

Lastly, Bar Counsel completely ignores the impact that the Court's publication of its correspondence has in this case. This is not a case, as in the Crossen case cited by Bar Counsel, where delays inherent in bar counsel's work led to publicity. Matter of Crossen, 450 Mass. 533, 579 (2008). Instead, in this case, the publicity that occurred here and which harmed Auerhahn was not part of *any* disciplinary process. Indeed, that is precisely the point – it was a form of discipline imposed by the Court free from any process in which Auerhahn was represented and could defend himself. Courts have routinely recognized that publication by a Court of criticism is a harsh penalty. See Williams v. United States, 158 F.3d 50, 50 (1st Cir. 1998) ("[b]eing branded unethical or incompetent by a federal judge can essentially destroy a lawyer's career") (Lynch, J. dissenting); Walker v. City of Mesquite, Texas, 129 F.3d 831, 832 (5th Cir. 1997) (stating, in action reversing finding of alleged professional misconduct of DOJ attorney, that it was "beyond peradventure that one's professional reputation is a lawyer's most important and valuable asset"). As with other arguments raised in this matter, Bar Counsel ignores these facts – and the violation of Auerhahn's rights – as if they do not matter. The negative public attention Auerhahn has endured over the past three years, coupled with the nearly twenty-year delay in initiating the current action necessitates dismissal.

## **Conclusion**

For these reasons and the reasons previously advanced in Auerhahn's Memorandum, this action should be dismissed.

        Respectfully submitted,

        JEFFREY AUERHAHN

        By his attorneys,

        /s/ *Michael D. Ricciuti*
        Michael DeMarco (BBO #119960)
        Michael D. Ricciuti (BBO #550771)
        Arnold R. Rosenfeld (BBO #428860)
        Ryan M. Tosi (BBO #661080)
        K&L GATES LLP
        State Street Financial Center
        One Lincoln Street
        Boston, MA 02111-2950
        Tel. (617) 261-3100
        Fax. (617) 261-3175
        michael.demarco@klgates.com
        michael.ricciuti@klgates.com
        arnie.rosenfeld@klgates.com
Dated: December 21, 2009        ryan.tosi@klgates.com

## CERTIFICATE OF SERVICE

       I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 21st day of December 2009:

Nancy E. Kaufman, Esq.  
Office of Bar Counsel  
99 High Street  
Boston, MA 02110  
Email: n.kaufman@massbbo.org

                                             /s/ *Michael D. Ricciuti*  
                                              Michael D. Ricciuti